Warren K. GILMORE, Appellant,

v.

The ALASKA WORKERS' COMPENSATION BOARD, Alaska Timber Insurance Exchange and Klukwan Forest Products, Inc., Appellees.

No. S–4765.

Supreme Court of Alaska.

Oct. 14, 1994.

As Amended on Grant of Rehearing; Emergency Motion for Stay of Decision Denied Nov. 22, 1994.

Peter R. Ellis, Ellis Law Offices, Inc., Ketchikan, for appellant.

Robert A. Royce, Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellee Alaska Workers' Compensation Bd.

Paul M. Hoffman, Robertson, Monagle & Eastaugh, P.C., Juneau, for appellees Alaska Timber Ins. Exchange and Klukwan Forest Products, Inc.

Michael A. Barcott, William D. De Voe, Faulkner, Banfield, Doogan & Holmes, Anchorage, for amici curiae.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

As originally presented by the parties, this case called upon us to construe the 1988 amendment to AS 23.30.220(a). This statute prescribes the wage base on which an injured worker's disability benefits are calculated. In the course of considering each party's contentions on this issue, we became aware of potential constitutional problems with the wage base calculation scheme found in AS 23.30.220(a). Specifically, we recognized that the formula contained in section 220(a) would result in substantially different compensation rates for workers who appeared to be in important respects similarly situated. These differences raised questions under the due process and equal protection clauses of the Alaska Constitution. *Sua sponte*, we ordered the parties to file supplemental memoranda addressing these questions. We now hold that the AS 23.30.220(a) formula violates the equal protection clause of the Alaska Constitution.

Under AS 23.30.180 and .185, temporary and permanent total disability benefits are calculated by taking eighty percent of an injured employee's "spendable weekly wages." Spendable weekly wages are, in turn, defined in AS 23.30.220(a) as the employee's gross weekly earnings minus payroll tax deductions.[1] Gross weekly earnings are calculated by totalling the employee's earnings for the past two calendar years and dividing the sum by 100. Until 1988, the Alaska Workers' Compensation Board (Board) was required to determine whether the wage base that resulted from the use of this or earlier similar mechanical formulas would fairly reflect the future earnings lost by an injured employee.[2] If the formula did not produce a fair result viewed from the perspective of both the employee[3] and the

1. AS 23.30.220(a)(1), (2) and (3) provide:
   **Sec. 23.30.220. Determination of spendable weekly wage.** (a) The spendable weekly wage of an injured employee at the time of an injury is the basis for computing compensation. It is the employee's gross weekly earnings minus payroll tax deductions. The gross weekly earnings shall be calculated as follows:
   (1) the gross weekly earnings are computed by dividing by 100 the gross earnings of the employee in the two calendar years immediately preceding the injury;
   (2) if the employee was absent from the labor market for 18 months or more of the two calendar years preceding the injury, the board shall determine the employee's gross weekly earnings for calculating compensation by considering the nature of the employee's work and work history, but compensation may not exceed the employee's gross weekly earnings at the time of injury;

   (3) if an employee when injured is a minor, an apprentice, or a trainee in a formal training program, as determined by the board, whose wages under normal conditions would increase during the period of disability, the projected increase may be considered by the board in computing the gross weekly earnings of the employee....

2. Former AS 23.30.220(a)(2) provided:
   If the board determines that the gross weekly earnings at the time of the injury cannot be fairly calculated under (1) of this subsection, the board may determine the employee's gross weekly earnings for calculating compensation by considering the nature of the employee's work and work history.

3. *Johnson v. RCA–OMS, Inc.*, 681 P.2d 905 (Alaska 1984).

employer,[4] the Board was permitted to determine gross weekly earnings by an alternative method based on the nature of the employee's job and his work history.

This alternative method was the subject of considerable litigation.[5] In 1988 the legislature eliminated the Board's discretion to use the alternative method in circumstances where the mechanical approach would lead to unfair results. Under the 1988 amendment, the Board may not make an alternative wage calculation unless "the employee was absent from the labor market for 18 months or more of the two calendar years preceding the injury...." AS 23.30.220(a)(2). As a result, the gross weekly earnings for purposes of calculating benefits for any employee present in the labor market for six or more months in the previous two calendar years will be determined by the mechanical formula provided in AS 23.30.220(a)(1). Because this formula divides the employee's total gross wages over the two year period by 100 regardless of how many weeks the employee actually worked during this period, the employee's actual wage earning capacity during periods of employment is reduced in proportion to any period in which the employee was unemployed for any reason.[6] The resulting benefits therefore may only be randomly related to the injured worker's actual loss. This formula applies regardless of any discrepancy, no matter how large, between the result of the formula and the actual wages lost by the employee during the period of his or her disability.

## I. FACTS AND PROCEEDINGS

Warren Gilmore suffered serious burn injuries on September 17, 1989, while employed by Klukwan Forest Products, Inc. (Klukwan). Klukwan's workers' compensation insurance carrier, Alaska Timber Insurance Exchange (Alaska Timber), paid Gilmore temporary total disability benefits of $110 per week until he was released to return to work on March 1, 1990. Gilmore started work for Klukwan on June 12, 1989 and was earning average spendable weekly wages of approximately $850. However, for the calendar years 1987 and 1988 he worked for a total of only thirty-nine weeks. He claims that for twenty-two of the thirty-nine weeks he was in vocational training programs learning to be a motorcycle mechanic. He contends that he should have been considered "absent from the labor market" within the meaning of section .220(a)(2) for these twenty-two weeks. If he is correct, he would be entitled to an alternative wage computation, for he would have been "absent from

---

4. *State, Dep't of Transp. v. Gronroos*, 697 P.2d 1047 (Alaska 1985).

5. *See, e.g., Houston Contracting, Inc. v. Phillips*, 812 P.2d 598, 600–01 (Alaska 1991) (use of alternative method proper where injured employee's employment history consisted of regular pattern of discontinuous, short-term employment); *Wrangell Forest Prods. v. Alderson*, 786 P.2d 916, 918 (Alaska 1990) (use of alternative method proper where formula method so substantially underestimates employee's projected future income as to no longer fairly calculate that amount); *Peck v. Alaska Aeronautical, Inc.*, 744 P.2d 663, 666–67 (Alaska 1987) (alternative method must be used when injury produces permanent total disability many years later, and injured employee's earning capacity has increased substantially in interim), *reh'g granted*, 756 P.2d 282 (Alaska 1988); *Brunke v. Rogers & Babler*, 714 P.2d 795, 800 (Alaska 1986) (employee injured three months after beginning new job at dramatically higher salary entitled to have temporary total disability payments based on alternative method instead of formula); *Gronroos*, 697 P.2d at 1049 (formula method inappropriate where employee recently retired from full-time employment and is injured in seasonal job); *Deu-*

ser v. State, 697 P.2d 647, 649 (Alaska 1985) (alternative method based on injured worker's wages on projected renewal of six-month contract must be used for purpose of temporary disability payments, where formula method substantially underestimates future income); *Johnson*, 681 P.2d at 907 (alternative method must be used where formula method so substantially underestimates injured worker's wage-earning capacity that formula did not accurately reflect his wage-earning capacity).

6. Thus, although the formula may roughly approximate the employee's lost wages when the employee worked full time during the entire two year period at the same job held at the time of injury or when the employee has consistently worked only at seasonal occupations, it does not account for any upward or downward change in the employee's earning capacity and punishes workers who have newly committed to full time employment. The formula also fails entirely to take account of any change in the employee's earning capacity that occurred during the year of injury.

the labor market" for at least eighteen months during the two years in question.

The Board rejected Gilmore's contention, ruling:

> AS 23.30.220(a) mandates that the employee's compensation rate must be calculated based on his 1987 and 1988 earnings unless he can demonstrate that he was "absent from the labor market" for at least 18 months during those two years. The 1988 legislation containing the present provision of AS 23.30.220(a)(2), Senate bill 322, carried an "intent" section which required that the benefits system be quick, efficient, fair, and predictable. The employee provides a novel argument to expand the meaning of "absent from the labor market," but any definition involving vocational intent, career experience, true earning potential, and so on, invariably leads into a gray area of disputed fact, a fertile ground for litigation, delay, and waste. The clearest rule and the rule least subject to dispute is to interpret "absent from the labor force" to mean simply "unemployed," and we consistently interpret the statute that way. *See, e.g., Langley v. Alaska Commercial Investments,* AWCB No. 89–0167 (July 5, 1989).

On appeal the superior court affirmed. The court stated:

> It was the intent of the legislature to establish a fair and predictable test for establishing eligibility for compensation rate adjustments pursuant to AS 23.30.220(a)(2). The Board's definition of "absent from the labor market" as "unem-

ployed" accomplishes this purpose ..., while also furthering the legislature's desire to narrow the group of employees allowed a compensation rate adjustment.

Gilmore appealed to this court. In the course of considering the arguments of the parties with respect to the meaning of the phrase "absent from the labor market," we took notice of potential equal protection and due process problems with AS 23.30.220(a). As these constitutional issues are "critical to a proper and just decision" in this case, we *sua sponte* ordered the parties to brief the question of the constitutionality of AS 23.30.220(a).[7] We also requested the parties, in briefing this question, to consider two examples in which the loss of future earnings for the injured workers would be the same: [8]

> Example A: Two workers work side-by-side for eleven and one half months in 1992, ending December 15th, as well as for the last seven months of 1991, beginning June 1st. During this period each worker performs the same work and earns the same wage. Worker # 1, however, did not work the first five months of 1991 or at all in 1990 because he was injured. Worker # 2, on the other hand, worked all of both 1991 and 1990. On December 15, 1992, both workers suffered the same injury in an on-the-job accident. Under AS 23.30.220(a)(2) the wage base for worker # 1 will be only 7/24 of that of worker # 2.

> Example B: Same facts as Example A except that there is a third worker doing the same work at the same wage who

---

7. *Vest v. First Nat'l Bank of Fairbanks,* 659 P.2d 1233, 1234 n. 2 ("Where, however, an issue that has not been raised involves a question of law that is critical to a proper and just decision, we will not hesitate to consider it, particularly after calling the matter to the attention of the parties and affording them the opportunity to brief the issue."), *reh'g granted,* 670 P.2d 707 (Alaska 1983).

8. We offered these examples in order to illustrate clearly the disparity among benefits which may result from rigid application of the mechanical approach of AS 23.30.220(a)(1). We do not intend to rely on hypothetical concerns in analyzing the constitutionality of AS 23.30.220. *See Municipality of Anchorage v. Leigh,* 823 P.2d 1241, 1245 & n. 11 (Alaska 1992). On the con-

trary, both examples illustrate concerns raised by Gilmore's own situation. Example A illustrates the harm to Gilmore which resulted from the Board's determination that he was in the labor force more than six months in the previous two calendar years. Gilmore was injured after working several months earning an average of $850 a week, but, under the Board's determination, he received only the statutory minimum of $110 a week during the period of his disability. Example B illustrates the possible benefits to Gilmore *if he successfully argued that he was absent from* the labor force for more than 18 months during the relevant years. Based on 80% of $850, Gilmore stood to receive up to 6.18 times more compensation if he established that he worked less.

suffers the same injury on December 15, 1992. Worker # 3, however, did not work during the first seven months of 1991 or at all in 1990 because he was injured. Worker # 3 would be entitled to an alternative calculation under AS 23.30.220(a) and may be eligible for compensation benefits based on his current wage which would approximate the wage base of worker # 2 and be nearly 3.4 times higher than that of worker # 1 (who worked two months longer than worker # 3 during 1991).

Briefing is now complete,[9] and the issue is ripe for decision.

## II. DISCUSSION

Article I, section 1 of the Alaska Constitution provides in part that "all persons are equal and entitled to equal rights, opportunities, and protection under the law." This clause may be more protective of individual rights than the federal equal protection clause. *State v. Cosio*, 858 P.2d 621, 629 (Alaska 1993). As our examples illustrate, the current statutory scheme clearly classifies injured employees based on differences in their prior work history. These classifications will often result in substantially different disability benefits for similarly situated employees. The question therefore is whether this unequal treatment is permissible under the Alaska Constitution.[10]

We have adopted a "sliding scale" test for analyzing equal protection questions under the Alaska Constitution. *State v. Erickson*, 574 P.2d 1, 11–12 (Alaska 1978). This test involves a three-step analysis:

First, it must be determined at the outset what weight should be afforded the ... interest impaired by the challenged enactment. The nature of this interest is the most important variable in fixing the appropriate level of review.... Depending on the primacy of the interest involved, the state will have a greater or lesser burden in justifying its legislation.

Second, an examination must be undertaken of the purposes served by the challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.

Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken.... At the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate. At the higher end of the scale, the fit between means and ends must be much closer. If the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated.

*Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 269–70 (Alaska 1984).

### A. Interest Impaired

The interest impaired by the classifications at issue is the injured employee's interest in compensation benefits which reflect his actual losses. In *Brown*, we implied that the employee's "right to receive the full measure of workers' compensation benefits which he would receive but for the classification" at issue was not an interest deserving of elevated scrutiny. *Id.* at 270–71. We noted that there is no constitutional mandate that benefits bear a particular relationship to the worker's salary at the time of injury.[11]

9. The parties have been joined in the briefing of this issue by Amici Curiae Alaska National Insurance Co., All Alaskan Seafoods, Alyeska Seafoods, Inc., NorQuest Seafoods, Inc., Ocean Beauty Seafoods, Inc., Peak Oilfield Services, Co., The Alaska Chapter of the Associated General Contractors, National Bank of Alaska, Trident Seafoods Corp., Unisea, Inc., Unit Co., and Wards Cove Packing Co.

10. If reasonably possible, we will construe statutes so as to avoid the conclusion that they are unconstitutional. *Sonneman v. Hickel*, 836 P.2d 936, 940 (Alaska 1992); *see also* 2A *Sutherland*

*Statutory Construction* § 45.11, at 48–49 (5th ed. 1992). We cannot, however, "go so far as to redraft defective legislation." *State v. Fairbanks North Star Borough*, 736 P.2d 1140, 1142 (Alaska 1987); *see also State v. Campbell*, 536 P.2d 105, 110–11 (Alaska 1975).

11. We listed both the maximum benefit cap provided in AS 23.30.175(a) and the possibility that actual earnings would not be used as the measure of compensation if they did not fairly represent wage-earning capacity under former 23.30.220 as variances from the "rule of thumb" that benefits should bear a fixed relationship to actual earnings. *Brown*, 687 P.2d at 270 & n. 7.

*Id.* at 270. As the employee's right to travel was also implicated by the classification at issue in *Brown,* we did not determine the exact weight to be afforded an injured employee's interest in particular benefit levels. *Id.* at 271. An interest in workers' compensation benefits is, however, similar to an interest in unemployment compensation benefits or other economic interests. We have consistently held that such economic interests are only "entitled to review at the low end of the scale." *Sonneman v. Knight,* 790 P.2d 702, 705 (Alaska 1990); *see also Cosio,* 858 P.2d at 629; *Coghill v. Coghill,* 836 P.2d 921, 929 (Alaska 1992); *State v. Anthony,* 810 P.2d 155, 158, *reh'g granted,* 816 P.2d 1377 (Alaska 1991); *Herrick's Aero–Auto–Aqua Repair Serv. v. State, Dep't of Transp.,* 754 P.2d 1111, 1114 (Alaska 1988). Therefore, section 220(a) will pass constitutional muster if the classifications it creates bear a fair and substantial relationship to the purposes of the Workers' Compensation Act (Act).

### B. *Purpose of the Act*

In analyzing equal protection challenges to a provision of the Workers' Compensation Act, we must examine the purpose behind the provision in light of the purpose of the entire Act. *Taylor v. Southeast–Harrison W. Corp.,* 694 P.2d 1160, 1162 (Alaska 1985). In adopting the 1988 amendments, the legislature clearly stated the purpose behind the Act:

> It is the intent of the legislature that AS 23.30 be interpreted so as to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of AS 23.30.

Ch. 79, § 1, SLA (1988). These are legitimate purposes. The overall purpose of AS 23.30.220(a) and the other sections of the Act used to calculate an injured worker's indemnity benefits is "to formulate a fair approximation of a claimant's probable future earning capacity during the period in which compensation benefits are to be paid."[12] *Johnson,* 681 P.2d at 907. This "fair approximation" is an essential component of the basic compromise underlying the Workers' Compensation Act—the worker's sacrifice of common law claims against the employer in return for adequate compensation without the delay and expenses inherent in civil litigation. The 1988 amendments to AS 23.30.220(a) attempt to further the Act's overall purpose by decreasing the amount of litigation over the determination of an employee's "spendable weekly wage." House Judiciary Hearing on SB 322, April 25, 1988, Tr. 13, 18–19.

### C. *Relationship of Means to Ends*

■ At the lower end of our sliding scale, the means adopted by the legislature

---

12. We note that the legislative history does indicate dissatisfaction with the difficulties inherent in determining the gross weekly wage under the alternative method of former AS 23.30.220(a)(2), used when the mechanical approach of section 220(a)(1) produced an unfair result.

> These cases, such as *Johnson v. RCA–OMS,* 681 P.2d 905 (Alaska 1984), and its progeny, have made the determination of spendable weekly wage impossible because it is based on the predictability of what someone might be making at some future point in time. We intend to clearly base the determination of spendable weekly wage on the employees' past earnings history except under some very specific cases....

Senate Labor and Commerce Committee, 15th Legislature, 2d session, Sectional Analysis of Worker's Compensation Task Force, SB 322 and HB 352, at 10. This statement does not, however, indicate that it is no longer the purpose of indemnity benefits to provide partial compensation for the injured employee's future losses. As we stated in *Johnson,* "[t]he entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of the impact of probable future earnings." 681 P.2d at 907 (quoting 2 Arthur Larson, *The Law of Workmen's Compensation* § 60.11(d), at 10–564 (1983)). The statement merely indicates that the legislature intended to use past earnings to calculate future losses in more instances.

must be substantially related to the ends sought to be achieved. *Brown*, 687 P.2d at 269–70. A perfect fit between the legislative classification and the governmental objective is not required. *Anthony*, 810 P.2d at 159. We nevertheless conclude that no substantial relationship exists between calculating a worker's weekly wage by dividing the worker's earnings over the last two calendar years by 100 regardless of whether the number reached reflects the worker's actual losses and the goals of fairly approximating a worker's probable future earning capacity and achieving a "quick, efficient, *fair*, and predictable delivery of indemnity and medical benefits."

The benefit levels among injured workers based on section 220(a) bear no more than a coincidental relationship to the goal of compensating injured workers based on their actual losses. In any of the many situations in which a worker's past wage and time of employment do not accurately reflect the circumstances existing at the time of the injury, the formula will misrepresent the losses.[13] The means chosen for determining an injured worker's gross weekly wage therefore do not bear a substantial relationship to that goal.

Klukwan and the Amici concede that the current version of AS 23.30.220(a) will lead to unfair or unfavorable results in some instances. They and the Board argue, however, that the statute is nevertheless constitutional because it is substantially related to the legislative interest in reducing litigation and in furthering quick, predictable results. We recognize that rigid application of the mechanical formula set out in AS 23.30.220(a)(1) probably leads to quick and predictable results. This efficiency is gained, however, at the sacrifice of fairness in result. The purpose of the Act, as expressed by the legislature, is to provide a "quick, efficient, *fair*, and predictable delivery of indemnity and medical benefits." The facts of the present case amply demonstrate the potential unfairness of a rigid application of the mechanical formula.[14] Under the section 220(a)(1) formula as applied by the Board, Gilmore received only the statutory minimum amount of compensation, despite his earning over seven and one-half times more per week at the time of injury.

Efficiency in this area does not require unfairness. A quick, efficient, and predictable scheme for determining a worker's gross weekly earnings could be formulated without denying workers like Gilmore benefits commensurate with their actual losses. Many jurisdictions avoid the need for an alternative open-ended determination of actual future earning capacity by focusing narrowly on wages at the time of injury and converting, by formula or formulas, the worker's rate of pay into a weekly wage. *See, e.g.*, D.C.Code Ann. § 36–311 (1993); Iowa Code Ann. § 85.36 (1984); Kan.Stat.Ann. § 44–511(b) (1993); Ky.Rev.Stat.Ann. § 342.140 (1993); Minn.Stat. § 176.011(18) (1993); Mo.Rev. Stat. § 287.250 (1993); Neb.Rev.Stat. § 48–126 (1990); N.J.Rev.Stat. § 34:15–37 (1988); N.M.Stat.Ann. § 52–1–20 (1978); 77 Pa.Cons. Stat.Ann. § 582 (1992).[15] Such a formulaic

---

13. For example, recent entrants to the full-time work place who formerly were housemakers, students, or trainees, or who were unable to work full time because of illness or injury, or who formerly relied in whole or in part on subsistence hunting and fishing, all potentially stand to be discriminated against by the section 220(a) formula. Moreover, where the employee was employed throughout the previous two calendar years at a high paying job, but has recently switched to a lower paying or part-time job, the employee will be unfairly overcompensated. *E.g.*, *Gronroos*, 697 P.2d 1047.

14. To be "fair," benefit levels must be at least rational. That is, they must bear at least some

relationship to the circumstances existing at the time of the injury. The formula approach of AS 23.30.220(a)(1), however, results in benefit levels which only randomly relate to the worker's earning capacity at the time of injury.

15. The majority of these statutes apparently follow, at least in part, the Council of State Governments' Draft Workmen's Compensation and Rehabilitation Law, quoted in 2 Arthur Larson, *The Law of Workmen's Compensation* § 60.11(a)(1), at 10.606 n. 77 (1993), which provides:

*Section 19. Determination of Average Weekly Wage.* Except as otherwise provided in this act, the average weekly wage of the injured employee at the time of the injury shall be

system can be quick, efficient, predictable, *and fair.* Review of the worker's compensation statutes of the other forty-nine states reveals that Alaska is the only state which bases compensation exclusively on the average wage earned over a more than one year period without providing an alternate approach if the formula reaches an unfair result. It is also the only state which includes significant periods of unemployment in calculating the worker's average wage without requiring a preliminary finding that the worker was employed in a seasonal occupation at the time of injury.[16]

The gross weekly wage determination method of AS 23.30.220(a) creates large differences in compensation between similarly situated injured workers, bears no relationship to the goal of accurately calculating an injured employee's lost wages for purposes of determining his or her compensation, is unfair to workers whose past history does not accurately reflect their future earning capacity, and is unnecessary to achieve quickness, efficiency, or predictability. Therefore, the formula expressed in AS 23.30.220(a) is not substantially related to the purposes of the Act. It cannot survive scrutiny on even the lowest end of our sliding scale and is therefore an unconstitutional infringement on the equal protection clause of the Alaska Constitution. Art. I, § 1.[17]

taken as the basis upon which to compute the compensation and shall be determined as follows:

(a) If at the time of the injury the wages are fixed by the week, the amount so fixed shall be average weekly wage;

(b) If at the time of injury the wages are fixed by the month, the average weekly wage shall be the monthly wage so fixed multiplied by twelve and divided by fifty-two;

(c) If at the time of injury the wages are fixed by the year, the average weekly wage shall be the yearly wage so fixed divided by fifty-two;

(d)(1) If at the time of the injury the wages are fixed by the day, hour, or by the output of the employee, the average weekly wage shall be the wage most favorable to the employee computed by dividing by thirteen the wages (not including overtime or premium pay) of said employee earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury.

(2) If the employee has been in the employ of the employer less than thirteen calendar weeks immediately preceding the injury, his average weekly wage shall be computed under the foregoing paragraph, taking the wages (not including overtime or premium pay) for such purpose to be the amount he would have earned had he been so employed by the employer the full thirteen calendar weeks immediately preceding the injury and had worked, when work was available to other employees in a similar occupation.

(e) If at the time of injury the hourly wage has not been fixed or can not be ascertained, the wage for the purpose of calculating compensation shall be the taken to be the usual wage for similar services where such services are rendered by paid employees.

(f) In occupations which are exclusively seasonal and therefore cannot be carried on throughout the year, the average weekly wage shall be taken to be one-fiftieth of the total wages which the employee has earned from all occupations during the twelve calendar months immediately preceding the injury.

. . . .

(i) When the employee is working under concurrent contracts with two or more employers and the defendant employer has knowledge of such employment prior to the injury, his wages from all such employers shall be considered as if earned from the employer liable for compensation.

We do not mean to imply that a similar statutory construction is constitutionally required. This draft section and the state laws following it do demonstrate, however, that a much closer fit between an employee's work history and his expected losses is possible within the confines of an exclusively formulaic definition of base wages.

16. Typically, worker's compensation statutes eliminate periods of unemployment greater than one week before calculating the average wage. *See, e.g.,* Conn.Gen.Stat. § 31–310 (1987 & 1994 Supp.); Mass.Gen.Laws.Ann. ch. 152, § 1 (1988) (two weeks); Mich.Comp.Laws § 418.371 (1988); Miss.Code Ann. § 71–3–31; Tenn.Code Ann. § 50–6–102 (1993); Va.Code.Ann. § 65.2–101 (1991). Other states follow the Council of State Government's draft and provide special provisions for seasonal employees. *See, e.g.,* Ky. Rev.Stat.Ann. § 342.130 (1993); Neb.Rev.Stat. § 48–126 (1990); 77 Pa.Cons.Ann. § 582 (1992); Wis.Stat. § 102.11 (1988).

17. Unconstitutional statutes may be either unconstitutional *as applied* or facially unconstitutional. *E.g., United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987);

## III. CONCLUSION

We reverse the Board's determination of Gilmore's weekly compensation rate as it was based on an unconstitutional statutory requirement. On remand, the Board should recalculate Gilmore's gross weekly earnings by using the alternative method specified in section 220(a).[18]

REVERSED AND REMANDED.

COMPTON, J., concurs.

BURKE, J., not participating.

COMPTON, Justice, concurring.

In my view the Alaska Workers' Compensation Board (Board) erred when it construed "absent from the labor force" to mean "simply 'unemployed.'" The basis for the Board's construction is its view of how to implement the legislative goal sought to be achieved by the amendments contained in Senate Bill 322, which is establishment of a quick, efficient, fair, and predictable benefits system. This goal is explicit in the prefatory 'intent' section of the bill. In the Board's view, any definition of "absent from the labor force" broader than "unemployed" would frustrate the legislative goal and lead to "a fertile ground for litigation." Consequently, "[t]he clearest rule and the rule least subject to dispute is to interpret 'absent from the labor force' to mean simply 'unemployed'...."

This simplistic construction may result in a bright line for applying the statutory limitation, and a benefits system with quick, efficient, and predictable results that will not be "a fertile ground for litigation." However, the litigative sterility it produces strips "fair" of any chance of life. "Fair" denotes a balancing of equities and interests. The Board's construction brooks of none. The phrase "absent from the labor force" cannot be construed properly unless the element of fairness is considered. The opinion of the court quite properly emphasizes that the legislature mandated that fairness be considered in administering the benefits system.

The Board found:

Gilmore worked at Dales Cycle in San Bernadino, California for 13 weeks and 5 days for $6.00 per hour to gain on-the-job experience in conjunction with the Motorcycle Mechanics Institute of Phoenix, Arizona. He also worked as J–S Repair in Edmonds, Washington under a veterans' benefit program for 8 weeks and 3 days at $7.00 per hour. He worked in these positions for experience because he hoped to establish an international dealership in reconditioned Harley Davidson motorcycles.

Alaska Workers' Compensation Board, Docket AWCB No. 8925031, Decision and Order, p. 2.

Gilmore's jobs were in connection with "formal training program[s]."[1] He was pur-

---

*Marks v. City of Anchorage,* 500 P.2d 644 (Alaska 1972); *see generally,* Michael C. Dorf, *Facial Challenges to State and Federal Statutes,* 46 Stan. L.Rev. 235 (January 1994). A statute is facially unconstitutional where it is incapable of being constitutionally applied, or where it is overbroad and infringes on values protected by the First Amendment. *Salerno,* 481 U.S. at 739, 745, 107 S.Ct. at 2095, 2100; *Marks,* 500 P.2d at 656 n. 7. Since section 220(a) may be applied constitutionally in a number of circumstances, for example, where the injured worker has had the same occupation for all of the past two calendar years, and since it does not involve the First Amendment, section 220(a) is unconstitutional as applied.

Our conclusion that AS 23.30.220(a) violates the equal protection clause of the Alaska Constitution renders our consideration of whether the statute also violates the due process clause of the Alaska Constitution unnecessary. Art. I, § 7.

**18.** We decline to reach the question raised by the Amici Curiae of whether our decision today should be given purely prospective application only. This question is not properly raised in this proceeding. With respect to Gilmore himself,

recalculation of his benefits accords with the rule that even in cases where a ruling is given prospective effect only, the litigant in the case in which the rule is announced is given the benefit of the rule. *Plumley v. Hale,* 594 P.2d 497, 505 (Alaska 1979).

**1.** The gross weekly earnings for "a minor, an apprentice, or a trainee in a formal training program" may be enhanced under AS 23.30.220(a)(3). Under Section (a)(3), in determining the gross weekly earnings for this special category of employees the Board may take into consideration "wages [which] under normal conditions would increase during the period of disability...." This enhancement is not permitted unless the injured employee falls within the Section (a)(3) exception. Thus the statute itself segregates the labor market. If a trainee is afforded disparate and more favorable treatment for the purpose of making a gross weekly earnings determination, it is difficult to justify treating the trainee's "formal training program" time as equivalent to that of an employee not so circumstanced. Presumably the enhancement is because the trainee is not part of the labor market.

suing an educational goal. One 'job' was subsidized by the federal government. Another 'job' was as a trainee in a program for which Gilmore paid a tuition in excess of $5,000, from which he was attempting to graduate. Thus his employment was, in his words, in furtherance of a primary educational objective: "The restrictions of an educational goal simply don't afford one an opportunity to pursue involvement in a 'free labor market.'"

Applying an "independent judgment" standard of review, *Phillips v. Houston Contracting, Inc.*, 732 P.2d 544 (Alaska 1987), I conclude that Gilmore should be rated under AS 23.30.220(a)(2). Gilmore was "absent from the labor market" for the requisite period. His rate of compensation should be calculated under AS 23.30.220(a)(2).

The court has concluded without resolution of the statutory construction issue that constitutional issues are "'critical to a proper and just decision' in this case...." Constitutional issues cannot be critical to a proper and just decision of the case until the court has determined that the Board's construction of AS 23.30.220(a)(2) is correct. If the Board's construction is not correct, and Gilmore would recover under this court's construction of the statute without resolution of constitutional issues which the court itself has raised, there is no justification for reaching the constitutional issues. I continue to believe in the doctrine that a court should abstain from reaching constitutional issues unless essential to a decision in the case. *See State v. Hazelwood*, 866 P.2d 827, 834 n. 2 (Alaska 1993) (Compton, J., dissenting in part: would not address constitutional issues until addressing whether evidence supported exception to exclusionary rule); *Abood v. League of Women Voters*, 743 P.2d 333, 343, 345 n. 3 (Alaska 1987) (Compton, J., dissenting: constitutional issue need not be decided as policy mandate of statute was dispositive); *Deubelbeiss v. Commercial Fisheries Entry Comm'n*, 689 P.2d 487, 491 (Alaska 1984) (Compton, J., concurring: abstain from answering constitutional questions when other dispositive grounds exist, citing *Escambia County v. McMillan*, 466 U.S. 48, 104 S.Ct. 1577, 80 L.Ed.2d 36 (1984)). This court has itself invoked the doctrine of abstention. *Municipality of Anchorage v. Anchorage Daily News*, 794 P.2d 584, 594 n. 18 (Alaska 1990) (civil rules constitute sufficient device for controlling discovery harassment, thus decline to reach broader constitutional issue); *State v. F/V Baranof*, 677 P.2d 1245, 1255 (Alaska 1984) (since owners were afforded due process, need not address constitutionality of statute), *cert. denied*, 469 U.S. 823, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984); *Zerbe v. State*, 578 P.2d 597, 598 (Alaska 1978) (because of disposition of first point on appeal, need not address constitutional issue), *overruled on other grounds, Stephens v. State, Dept. of Revenue*, 746 P.2d 908 (Alaska 1987); *Puller v. Municipality of Anchorage*, 574 P.2d 1285, 1288 (Alaska 1978) (in light of construction of statute, do not reach constitutional issues); *State v. City of Anchorage*, 513 P.2d 1104, 1112 (Alaska 1973) (interpretation of statute makes it unnecessary to reach constitutional issue); *Anniskette v. State*, 489 P.2d 1012, 1016 (Alaska 1971) (since conduct protected by constitution, do not reach broader question of statute's constitutionality, cited with approval in *Marks v. City of Anchorage*, 500 P.2d 644, 647 n. 9 (Alaska 1972); *Perry v. State*, 429 P.2d 249, 251–52 (Alaska 1967) (do not need to reach and therefore decline to reach statutory issue, since answer might lead to constitutional issue; should not pass on constitutional issue unless determination essential to decision of case). However, it has not always seen fit to follow it. *Granato v. Occhipinti*, 602 P.2d 442, 447 (Alaska 1979) (Boochever, J., with whom Rabinowitz, C.J., joins, dissenting: court should not construe statute to reach an incongruous result, thereby necessitating resolution of constitutional issue). Similarly, the court of appeals has invoked the doctrine of abstention. *Robins v. Municipality of Anchorage*, 711 P.2d 550, 552 (Alaska App. 1985) (need not decide constitutional issue, since probable cause for arrest existed prior to giving breath test); *State v. Williams*, 653 P.2d 1067, 1069 (Alaska App.1982) (do not reach constitutional issue since case can be resolved by applying Alaska Rules of Criminal Procedure), *aff'd in part*, 681 P.2d 313 (Alaska 1984).

I think it unfortunate that this court continues to take an *ad hoc* approach to application of the doctrine of abstention. First, failure to apply the doctrine may result in unnecessary confusion and disruption within the governmental agency charged with the responsibility of attempting to enforce a statutory scheme, part of which is no longer operative. Second, failure to apply the doctrine may afford a windfall benefit to non-litigants whose position is bettered by a declaration of unconstitutionality, while applying the doctrine may deny the benefit to a particular litigant. This inconsistency may be viewed as evidencing either arbitrariness or favoritism, neither of which should be tolerated.

Since I agree that Gilmore should be rated under AS 23.30.220(a)(2), I concur in the result.

### ORDER REGARDING EMERGENCY MOTION FOR STAY OF DECISION

1. The court has considered the Board's emergency motion for stay of decision of October 14, 1994. The emergency motion demonstrates that the court failed to consider a material remedial question, namely, whether AS 23.30.220(a) is facially unconstitutional or unconstitutional as applied. Accordingly, the court deems the motion to be, in part, a motion for rehearing under Appellate Rule 506. As such, the court GRANTS rehearing and amends the opinion by adding a new paragraph to the beginning of footnote 17. [Editor's Note: Amendment incorporated for publication.]

2. Except as noted in paragraph one of this order, the emergency motion for stay of decision is DENIED. The opinion in this case as modified on rehearing should guide the Board as to how to proceed when the formula of AS 23.30.220(a)(1) yields a result which does not fairly reflect the future earnings loss of an injured employee. In such cases, as in the present case, the alternative method contained in section 220(a)(2) is to be used.

3. The question of prospectivity or retroactivity, and the type of prospectivity or retroactivity, will be addressed in the context of a case in which the question is essential to the decision. In the meantime, the past opinions of this court should serve as a basis for an informed decision by the Board. *See Metcalf v. Felec Servs.,* 784 P.2d 1386 (Alaska 1990); *Morrison v. Afognak Logging, Inc.,* 768 P.2d 1139 (Alaska 1989); *Vienna v. Scott Wetzel Servs., Inc.,* 740 P.2d 447 (Alaska 1987); *Suh v. Pingo Corp.,* 736 P.2d 342 (Alaska 1987).