**FLOWLINE OF ALASKA and Alaska National Insurance Company, Appellants,**

v.

**Vincent BRENNAN and Alaska Workers' Compensation Board, Appellees.**

**Vincent Brennan, Cross–Appellant,**

v.

**Flowline of Alaska and Alaska National Insurance Company, Cross–Appellees.**

No. S–11900.

Supreme Court of Alaska.

Feb. 17, 2006.

Richard L. Wagg, Russell, Tesche, Wagg, Cooper & Gabbert, Anchorage, for Appellants.

Michael J. Jensen, Law Office of Michael J. Jensen, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

In this case, Flowline Alaska, Inc. contests the Alaska Workers' Compensation Board's classification of Flowline's former employee, Vincent Brennan, as an hourly worker under AS 23.30.220. The Board found that Brennan's work did not fit "neatly or precisely" into the classifications provided in AS 23.30.220 and concluded that his work most closely fit that of an "ongoing, hourly" worker under AS 23.30.220(a)(4). The superior court, acting as an intermediate appellate court, affirmed. After careful review of the parties' briefs and arguments, we agree with Superior Court Judge Sen K. Tan's conclusions and adopt the superior court's decision.[1]

█ Flowline raises three main arguments in this appeal. The first is that Brennan is an "exclusively temporary" employee for the purposes of AS 23.30.220(a)(6).[2] But the

---

1. *See* Appendix A. We have edited the superior court's decision to conform to our technical rules.

2. AS 23.30.220(a)(6) in the form applicable to this case provides:

   (a) Computation of compensation under this chapter shall be on the basis of an employee's spendable weekly wage at the time of injury.

Board's finding that Brennan was not an "exclusively temporary" employee is supported by substantial evidence, including the number of hours Brennan had worked, his continuing relationship with the union, and his work history with Flowline. The Board's interpretation of the statutory language is also consistent with the legislative intent regarding the category of "exclusively temporary" workers. This category is intended to apply to those persons who take on the occasional job but who otherwise do not participate significantly in the workforce in light of the fact that "many workers in the state choose a subsistence lifestyle and are only occasionally, sporadically, or on a part-time basis members of the workforce." [3]

Flowline's second argument concerns the Board's finding that AS 23.30.220(a)(4)(A), rather than subsection (a)(4)(B), was applicable to Brennan's compensation calculation.[4] But the Board's application of subsection (a)(4)(A) to Brennan's situation is supported by substantial evidence given that he had been employed by Flowline for more than thirteen calendar weeks, with stoppages only for interruptions consistent with the nature of the work he performed.

[2] Finally, Flowline complains about the Board's use of the "fairness" language of *Gilmore*[5] in its decision of February 24, 2003 and argues that the Board used an improper test to decide Brennan's case. But it is clear from the Board's decision that it was well aware that the *Gilmore* test and related tests may not be applied to the post–1995 version of the statute after our decision in *Dougan v. Aurora Electric, Inc.*[6] The Board properly discussed which provision of the new statute applies to Brennan's case. And although the Board's use of language from decisions which no longer apply to the amended statute may seem confusing, it is clear from the context of the Board's language that the Board used it as a shorthand method to indicate its interpretation of the statute's legislative purpose. That purpose itself retains the fairness language, as it is the legislature's intent that the statute be used to "fix a fair approximation of an employee's probable future earning capacity during a period of temporary partial or temporary total disability." [7] As we pointed

---

An employee's spendable weekly wage is the employee's gross weekly earnings minus payroll tax deductions. An employee's gross weekly earnings shall be calculated as follows:

. . . .

(6) if at the time of injury the employment is exclusively seasonal or temporary, then, notwithstanding (1)-(5) of this subsection, the gross weekly earnings are 1/50 of the total wages that the employee has earned from all occupations during the calendar year immediately preceding the injury[.]

3. Ch. 75, § 1(a)(4), SLA 1995.

4. AS 23.30.220(a)(4)(A) and (a)(4)(B), in the form applicable to this case, provide:

(a) Computation of compensation under this chapter shall be on the basis of an employee's spendable weekly wage at the time of injury. An employee's spendable weekly wage is the employee's gross weekly earnings minus payroll tax deductions. An employee's gross weekly earnings shall be calculated as follows:

. . . .

(4) if at the time of injury the

(A) employee's earnings are calculated by the day, hour, or by the output of the employee, the employee's gross weekly earnings are the employee's earnings most favorable to the employee computed by dividing by 13 the employee's earnings, not including overtime or

premium pay, earned during any period of 13 consecutive calendar weeks within the 52 weeks immediately preceding the injury;

(B) employee has been employed for less than 13 calendar weeks immediately preceding the injury, then, notwithstanding (1)-(3) of this subsection and (A) of this paragraph, the employee's gross weekly earnings are computed by determining the amount that the employee would have earned, including overtime or premium pay, had the employee been employed by the employer for 13 calendar weeks immediately preceding the injury and dividing this sum by 13[.]

5. *Gilmore v. Alaska Workers' Comp. Bd.*, 882 P.2d 922, 924 (Alaska 1994). *Gilmore* was explicitly concerned with balancing the purposes of the Workers' Compensation Act as a whole, purposes which included the "quick, efficient, fair, and predictable" delivery of benefits to injured workers. *Id.* at 927. Fairness was considered an essential component of the application of the statute and could not be sacrificed in the pursuit of the other purposes. *Id.* at 928.

6. 50 P.3d 789, 797 (Alaska 2002) (holding that the *Gilmore* test is no longer necessary when the initial determination of compensation is based on the amended version of AS 23.20.220).

7. Ch. 75, § 1(b)(2), SLA 1995.

out in *Gilmore*, a fair approximation of a claimant's future earning capacity lost due to the injury is the "essential component of the basic compromise underlying the Workers' Compensation Act—the worker's sacrifice of common law claims against the employer in return for adequate compensation without the delay and expenses inherent in civil litigation." [8] Despite subsequent amendments to the statute aimed at increasing the efficiency and predictability of the compensation process, this compromise, and the fairness requirements it engenders, provide the context for interpreting the Workers' Compensation Act.

For these reasons and those discussed in Judge Tan's attached decision, we AFFIRM the application of AS 23.30.220(a)(4)(A) to the calculation of Brennan's compensation rate.

## APPENDIX A

### IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### THIRD JUDICIAL DISTRICT AT ANCHORAGE

FLOWLINE OF ALASKA and ALASKA NATIONAL INSURANCE COMPANY,

Appellants,

v.

VINCENT BRENNAN and ALASKA WORKERS' COMPENSATION BOARD,

Appellees.

VINCENT BRENNAN,

Cross–Appellant,

v.

FLOWLINE OF ALASKA and ALASKA NATIONAL INSURANCE COMPANY,

Cross–Appellees.

Case No. 3AN–03–5882 CI

8.  882 P.2d at 927.

1.  50 P.3d 789 (Alaska 2002).

### DECISION ON APPEAL

#### INTRODUCTION

This matter is before the court after remand to the Alaska Workers' Compensation Board (Board) for consideration of the Alaska Supreme Court decision in *Dougan v. Aurora Electric Inc.*[1] In 2002, this court remanded the case after the *Dougan* decision, to allow the Board to review a new authority on point.

Appellants Flowline of Alaska and Alaska National Insurance Company (Flowline) appeal from the Decisions and Orders of the Board entered March 18, 2003 and March 28, 2003 modifying its decision entered February 24, 2003. Flowline is appealing the Board's determination that, in accordance with *Dougan*, Vincent Brennan (Brennan) was an hourly worker under AS 23.30.220(a)(4)(A) rather than an exclusively temporary worker under AS 23.30.220(a)(6).

Flowline contends that the Board erred as a matter of law and that the Board's decision is not supported by substantial evidence. Because the findings are supported by substantial evidence and there was no error in the Board's decision, the Board's decision is AFFIRMED.

#### STANDARD OF REVIEW

The Supreme Court of Alaska has recognized at least four principal standards of review of administrative decisions. Those standards were discussed in the court's 2002 decision and will not be discussed here. For the purposes of this appeal, two standards are relevant.

With regard to issues of law, such as statutory interpretation, this court must apply the substitution of judgment standard when the question of law on appeal does not involve administrative agency expertise or where the agency's expertise is not particularly probative. Under the substitution of judgment standard, this court may substitute its own judgment for that of the Board even if the Board's decision had a reasonable basis in law.[2]

2.  *Hammer v. City of Fairbanks*, 953 P.2d 500, 504 (Alaska 1998).

Next, regarding issues of fact, this court must affirm an agency fact determination if the decision is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." [3]

## FACTS

On March 5, 1999, while working as a laborer for Flowline, Brennan suffered a back injury and was entitled to time loss benefits.[4] Flowline initially paid Brennan's weekly compensation rate at the statutory minimum, based on a determination that Brennan was a seasonal, temporary worker.

Brennan had worked for Flowline off and on since November of 1998 until his injury in March 1999. Brennan testified that it was his understanding that he would work with Flowline full time with intermittent interruptions due to weather conditions, equipment breakdowns, and other factors. Brennan testified that he believed he was called back on March 3, 1999 to finish what the crew had previously started.

From 1993 through 1996, Brennan worked between 1,200 and 1,900 hours through the Laborers Union Local 942, taking a year off in 1997 to build a house. In July of 1998, Brennan began working for the union again.

The local laborer's business manager and secretary treasurer, Joe Thomas, testified that the union does not classify workers as seasonal, although employers and contractors might "consider the work seasonal." But the union considered the members eligible for work year-round. Thomas also testified to Brennan's union work history.

On April 28, 1999, Brennan filed a Workers' Compensation claim, asking for a compensation rate adjustment based on calculating the rate under AS 23.30.220. Brennan asked to adjust his compensation to an average weekly wage of $783.85 based upon the best 13 weeks in the prior 52–week calculation. AS 23.30.220(a)(4)(A).[5]

After a hearing, on June 15, 2000, the Board issued its first decision. The Board determined that Brennan was not a temporary employee as defined in AS 23.30.220(a)(6),[6] but rather determined he was an hourly worker with "intermittent interruptions" whose rate should be calculated under AS 23.30.220(a)(4)(B).[7] Further, the Board ordered a calculation of benefits under AS 23.30.395(15) and 8 AAC 45.220(c)(3)(B) to include pension and health benefit contri-

---

**3.** *Nunley v. State of Alaska*, 99 P.3d 7, 10 (Alaska 2004) (citing *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992)).

**4.** The facts detailed here supplement the statement of facts set out in this court's June 24, 2003 decision.

**5.** AS 23.20.220(a)(4)(A) states:

(a) Computation of compensation under this chapter shall be on the basis of an employee's spendable weekly wage at the time of injury. An employee's spendable weekly wage is the employee's gross weekly earnings minus payroll tax deductions. An employee's gross weekly earnings shall be calculated as follows:
. . . .
(4) if at the time of injury the
(A) employee's earnings are calculated by the day, hour, or by the output of the employee, the employee's gross weekly earnings are the employee's earnings most favorable to the employee computed by dividing by 13 the employee's earnings, not including overtime or premium pay, earned during any period of 13 consecutive calendar weeks within the 52 weeks immediately preceding the injury[.]

**6.** AS 23.30.220(a)(6) states:

[I]f at the time of injury the employment is exclusively seasonal or temporary, then, notwithstanding (1)-(5) of this section, the gross weekly earnings are 1/50 of the total wages that the employee has earned from all occupations during the calendar year immediately preceding the injury[.]

**7.** AS 23.30.220(a)(4)(B) states:

(4) if at the time of injury the
. . . .
(B) employee has been employed for less than 13 calendar weeks immediately preceding the injury, then, notwithstanding (1)-(3) of this subsection and (A) of this paragraph, the employee's gross weekly earnings are computed by determining the amount that the employee would have earned, not including overtime or premium pay, had the employee been employed by the employer for 13 calendar weeks immediately preceding the injury and dividing this sum by 13[.]

butions. The Board dismissed Brennan's claim for a penalty award.

Flowline petitioned for reconsideration. The Board granted reconsideration on July 7, 2000 and ordered additional briefing.

On August 8, 2000, after reconsidering the evidence, the Board found that compensation should be set under AS 23.30.220(a)(4)(A) rather than under AS 23.30.220(a)(4)(B) because Brennan actually worked for Flowline from November 1998 through the beginning of March 1999, a period exceeding the 13 week period required by (a)(4)(B). The Board also affirmed its original denial of a penalty award.

Again, Flowline petitioned for reconsideration. On September 1, 2000, after reconsidering Flowline's petition, the Board affirmed its prior decision.

Flowline then appealed the Board's decisions and Brennan counter-appealed the Board's denial of penalties. After the appeal was filed, Brennan made a claim for penalties, interest and attorneys' fees and costs due to Flowline's late payment of the Board-ordered compensation rate increase.

On January 24, 2001, the Board entered its final decision. It ordered Flowline to reinstate benefits at the full rate of $591.61, without an offset, and in addition, to pay a 25 percent penalty on the award as well as awarding interest on all benefits awarded, attorneys' fees and costs.

Flowline appealed the Board's decision and asked that the court reverse and remand the Board's decision and require them to place Brennan in the temporary worker category for purposes of calculating his gross weekly earning and his compensation rate. Brennan appealed the Board's denial of penalties relating to the increased compensation rate awarded to him under AS 23.30.220(a)(4).

This court initially affirmed the Board's decision, finding that the Board properly applied the Alaska Supreme Court decisions in *Gilmore v. Alaska Workers' Compensation Board*[8] and *Thompson v. United Parcel Ser-*

*vice.*[9] However, the Alaska Supreme Court then issued its decision in *Dougan,* which declared the *Gilmore* test inapplicable to the cases arising under the revised version of AS 23.30.220(a). Accordingly, upon reconsideration, this court reversed its decision and remanded back to the Board for determination, in light of *Dougan,* whether Brennan was an hourly worker rather than a temporary worker under AS 23.30.220(a).

On remand, the Board issued its February 24, 2003 decision determining that Brennan's work was not "exclusively seasonal or temporary" and, in accordance with *Dougan,* AS 23.30.220(a)(4)(A) was the section applicable to establishing Brennan's compensation rate.

The Board affirmed its decision on reconsideration on March 18, 2003 and again reaffirmed its decision on March 23, 2003. The Board stated that they could not find Brennan's work was "exclusively seasonal or temporary" under AS 23.30.220(a)(6).

This appeal follows.

## DISCUSSION

### The Board's Application of AS 23.30.220 Was Legally Correct.

Alaska Statute 23.30.220 is the statutory provision that sets the "spendable weekly wage" upon which workers' compensation is determined. There are different methods of making this calculation. Two of them are at issue in this appeal, AS 23.20.220(a)(4) and (a)(6).

Interpretation of AS 23.30.220 is a question of law and statutory interpretation that does not involve agency expertise. Therefore, this court will substitute its judgment for that of the Board.

Alaska Statute 23.30.220(a)(6) provides in part "if at the time of the injury the employment is exclusively seasonal or temporary, then *notwithstanding* (1)-(5) *of this subsection,*" the method provided in subsection (a)(6) applies. The statutory interpretation issue is straightforward. If an employee is an "exclusively seasonal or temporary" worker, then (a)(4) would not apply.

8. 882 P.2d 922 (Alaska 1994).

9. 975 P.2d 684 (Alaska 1999).

Here, Brennan was found to not be an exclusively temporary or seasonal employee, therefore (a)(6) does not apply. Additionally, the Board found that Brennan's employment lasted longer than 13 calendar weeks, excluding the application of (a)(4)(B). Brennan's earnings while with Flowline were calculated by the hour, excluding the application of (a)(1–3). The remaining sections are clearly not applicable. Based on the Board's factual findings, the most appropriate formula for calculating Brennan's compensation is (a)(4)(A).

The Board, properly, did not apply the *Gilmore* "accurate predictor" test. The accurate predictor test turns on whether the worker's wage history was an accurate predictor of losses due to injury. Under *Gilmore,* the Board could not deviate from the statutory scheme unless there was substantial evidence to support the conclusion that past wage levels would lead to an irrational workers' compensation award.[10] *Dougan* held that the *Gilmore* test is no longer necessary when the Board's initial determination is based on the amended version of AS 23.20.220.[11]

As a matter of law, the Board was correct in its application of AS 23.30.220(a)(4)(A) to Brennan's compensation calculation.

### The Board's Finding that Brennan Was Not an Exclusively Temporary Employee is Supported by Substantial Evidence.

Flowline argues that the evidence presented conclusively establishes that Brennan was hired in March 1999 for a 5–day job and therefore AS 23.30.220(a)(6) applies because Brennan was a temporary employee.

The Board based its decision on the documentary record and the testimony of both Brennan and Thomas. Brennan testified that he worked intermittently for Flowline from November 1998 until his injury in March 1999. Brennan also testified that he believed the March 1999 job was a continua-

tion of a project he had previously started. Based on Brennan's testimony, the Board found that even though there were interruptions in the work period, the interruptions were consistent with the nature of the work Brennan performed and Brennan had a reasonable expectation of working on an ongoing basis year-round. Due to Brennan's testimony that he understood his work with Flowline to be permanent and that he would have returned to work for Flowline in August of 1999, the Board found Brennan did not perform temporary work.[12]

The substantial evidence standard applies to the Board's factual findings. Accordingly, the testimony of Brennan and Thomas and other relevant evidence is adequate to support the conclusion that Brennan's work was not exclusively temporary. The Board's finding that Brennan was not an "exclusively seasonal or temporary employee" is supported by substantial evidence.

### CONCLUSION

For the reasons stated above, the Board's decision that Brennan was not an exclusively temporary worker and the Board's subsequent application of AS 23.30.220(a)(4)(A) is AFFIRMED.

DATED at Anchorage, Alaska, this 16th day of March, 2005.

/s/

SEN K. TAN

Superior Court Judge

---

10. *Thompson,* 975 P.2d at 689.

11. *Dougan,* 50 P.3d at 797.

12. "Temporary work" is defined as "employment that is not permanent, ends upon completion of the task, job, or contract, and ends within six months from the date of injury." AS 23.30.220(c)(2).