**Del SUMNER, Appellant,**

v.

**EAGLE NEST HOTEL, Alaska National Insurance Company, and The Alaska Workers' Compensation Board, Appellees.**

No. S–6342.

Supreme Court of Alaska.

May 5, 1995.

William J. Soule, Anchorage, for appellant.

Shelby L. Nuenke–Davison, Davison & Davison, Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

COMPTON, Justice.

Del M. Sumner was injured while working at the Eagle Nest Hotel (Eagle Nest). He received a permanent partial impairment (PPI) rating which he communicated in full to Eagle Nest's workers' compensation insurance carrier[1] on July 31, 1991. Lump-sum PPI benefits were fully paid by August 21, 1991, despite a temporary controversion of Sumner's claim. Sumner appealed to the Alaska Workers' Compensation Board (Board) asking for a penalty for late payment of PPI benefits. The Board ultimately denied relief. On appeal to the superior court pursuant to Appellate Rule 601, the denial was affirmed. Sumner appeals. We affirm.

## I. *FACTS AND PROCEEDINGS*

Sumner was hired by Eagle Nest as a part-time maintenance worker in mid-April 1991. Sumner claimed that he injured his back a few days later. He called Eagle Nest the next day and reported the injury. A notice of injury was filed May 6. The first temporary total disability (TTD) payment was made on May 10. Other TTD payments were made on May 23, June 6, June 20, July 1, and July 19.

Sumner was referred to Dr. Michael James, who saw him on May 13. Dr. James placed him in a physical therapy program. After completion of this program, Dr. James examined Sumner and approved his return to certain work. Dr. James also gave Sumner a PPI rating of fourteen percent. This examination took place on July 25. The insurer received Dr. James' report by fax on July 31.

ANIC began tallying PPI benefits biweekly from July 26 onward. PPI payments were made on July 31 and August 14. The July 31 payment included TTD benefits through July 25 and PPI benefits from July 26 forward. On August 9, ANIC filed a controversion notice, contesting the lump-sum PPI payment. ANIC noted that PPI benefits were being paid biweekly pending clarification of the PPI rating from the examining doctor. The reason for the controversion was that Dr. James' report indicated some improvement in the affected area; continued improvement might lead to a lower PPI rating in the future, which would result in a lower lump-sum payment. Clarification was received on August 19 and the lump-sum PPI payment was made on August 21.

Sumner then filed an Application for Adjustment of Claim, claiming he was entitled to a twenty-five percent penalty on the PPI sum as well as fees and costs. Through its interpretation of AS 23.30.155(b)[2] and (e),[3]

---

1. Eagle Nest's workers' compensation insurance carrier was Alaska National Insurance Company (ANIC).

2. The first installment of compensation becomes due on the 14th day after the employer has knowledge of the injury or death. On this date all compensation then due shall be paid. Subsequent compensation shall be paid in installments, every 14 days, except where the board determines that payment in installments should be made monthly or at some other period.
   AS 23.30.155(b).

3. If any installment of compensation payable without an award is not paid within seven days after it becomes due, as provided in (b) of this section, there shall be added to the unpaid installment an amount equal to 25 percent of it. This additional amount shall be paid at the same time as, and in addition to, the installment, unless notice is filed under (d) of this section or unless the nonpayment is excused by the board after a showing by the employer that owing to conditions over which the employer had no control the installment could not be paid within the period prescribed for the payment.
   AS 23.30.155(e).

the Board held that payment was late if not paid within twenty-one days of the date the employer learned of the PPI rating.[4] The Board, by counting the day the employer became aware of the rating, found that payment occurred on the twenty-second day, and awarded a twenty-five percent penalty. Under AS 23.30.155(d), the Board found that the adjuster had not reasonably controverted the claim. A penalty of $4500 was ordered.

The Board suspended its decision one week later, noting that it might have been mistaken in counting the day that notice was received. It reconsidered and decided that the notice day did not count, and thus payment was timely. Sumner argued that the next scheduled TTD payment date should have been the PPI payment date; the Board noted that applying section 155 to PPI payments would result in a "more consistent and equitable structure" for payments than would requiring the PPI payment on the next TTD payment date.

Sumner appealed to the superior court, which affirmed. The court concluded that the statute was ambiguous as to when a lump-sum PPI payment would be due. It agreed with the Board, both in its application of section 155 to PPI payments and its decision not to count the day notice was received. The court agreed with the Board that this date was July 31. Sumner appeals.

## II. *DISCUSSION*

### A. *Standard of Review*

The parties dispute the appropriate standard of review. Sumner contends that the main issues in this case are legal and thus this court should review it under the substitution of judgment standard. ANIC argues that review of the time-period issue is a matter of fundamental policy and should be reviewed under the "reasonable basis" standard.

■■■ We have articulated two standards under which agency interpretations of statutory terms (questions of law) will be reviewed. In general, the rational basis standard defers to the agency's interpretation of the statute, if reasonable. The substitution of judgment standard substitutes the court's interpretation of the statute. *See Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987).[5]

■ Under either standard, no deference is given to the decision of the superior court. "[W]hen the superior court acts as an intermediate court of appeal, no deference is given to the lower court's decision." *Tesoro,* 746 P.2d at 903.

The issue of the appropriate standard of review need not be addressed, as the agency's action satisfies either.

### B. *Issues Relevant to the Case*

This case turns on two questions: (1) was the PPI payment timely made, and (2) if so, can a request for clarification or controversion that did not delay payment still result in the assessment of a penalty?[6]

---

**4.** The Board has applied AS 23.30.155 to PPI payments in other rulings. *See Fahlsing v. Arctic N. Servs. Co.,* AWCB No. 9029940 (Mar. 29, 1994); *Chenery v. Gensco of Alaska,* AWCB No. 9120852 (Sept. 25, 1992); *Binder v. Fairbanks Historical, Preservation Found.,* AWCB No. 8816700 (Dec. 11, 1991).

**5.** "The rational basis test is used where the questions at issue implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987). The rational basis approach merely determines whether the agency's determination is supported by the facts and is reasonably based in law. *Id.*
  The substitution of judgment standard is applied when the question of law does not involve agency expertise or where the expertise is not particularly probative. *Id.* "Application of this standard permits a reviewing court to substitute its own judgment for that of the agency even if the agency's decision had a reasonable basis in law." *Id.*

**6.** Sumner devotes portions of his briefs urging application of the presumption of compensability to penalties and rebutting an allegedly improper argument by ANIC about the inapplicability of section 155(e) to PPI payments. These issues are irrelevant. The presumption of compensability deals with an employer's liability for workers' compensation payments. *C.f. Sokolowski v. Best Western Golden Lion Hotel,* 813 P.2d 286, 292 (Alaska 1991). As Sumner admits, *"Liability* for the P.P.I. benefits was *never* controverted in this case."
  Sumner also argues that the Board should have awarded interest on the lump-sum pay-

We conclude that the PPI payment was timely made, and that a controversion that does not delay payment, even if made in bad faith, does not provide the basis for a penalty.

### C. *The Lump-sum PPI Benefits Were Paid on Time*

This issue involves two questions: the method of measuring the time for payment, and the date the time period started running.

#### 1. *The Board Properly Defined the Time Limit for Payment of PPI Benefits*

■ The parties dispute whether the lump-sum payment was due on the next scheduled TTD payment date (August 14, Sumner's position), or due within twenty-one days of notice of the PPI rating under AS 23.30.155 (August 21, ANIC's position).

Alaska statutes and cases do not provide a due date for PPI lump-sum payments. PPI payment rules are delineated in AS 23.30.190, and no statutory time frame is clearly specified.[7] Alaska Statute 23.30.155(b) and (e), providing for installment payments within fourteen days and penalties if the payment is over seven days late, have not been applied by this court to a case involving PPI payments. Under 8 AAC 45.063(a), time periods under the Alaska Workers' Compensation Act do not include the day of the event.

■ An examination of workers' compensation law prior to the 1988 amendments provides one perspective on this issue. Section 190, providing for permanent partial disability payments, was markedly different than the present version. Depending on the injury, compensation was provided for a certain number of weeks at eighty percent of wages. Former AS 23.30.190(a)(1) (amended 1988). The relevant provisions of section 155, providing for "payment of compensation," were largely the same. Section 155(a) stated, "Compensation under this chapter

shall be paid periodically." Section 155(b) provided for payment of the first installment by the fourteenth day after knowledge "of the injury or death." Later compensation installments were due every fourteenth day. Therefore, PPD payments were made in installments, and the fourteen day period with the seven day penalty period applied. *See Fairbanks N. Star Borough Sch. Dist. v. Crider*, 736 P.2d 770, 772, 774–75 (Alaska 1987) (case under former statutory scheme noting that PPD payments in biweekly installments are the norm). Therefore, there is a historical basis for applying the section 155 time periods to the current act. Quite possibly the legislature simplified section 190 without considering the payment ramifications, or whether section 155 still applies to PPI payments.

Applying the next TTD payment date as the PPI due date is undesireable from policy standpoint as it would result in a variable time period of eight to twenty-one days for PPI payment (the one to fourteen days until the next TTD payment plus the seven day penalty period). The Board noted this uncertainty in its June 8, 1992 decision, analogizing the resulting variable period to a "game of craps."

The Board's interpretation gives the employer adequate time to analyze a PPI rating, and establishes a consistent twenty-one day period for payment. There is a rational basis for the Board's decision. The decision comports with the historic workers' compensation framework and does not contradict any case or statute. Were we to apply our independent judgment, we would arrive at the same conclusion. Therefore, we affirm that decision.

#### 2. *The Issue of the Notice Date Has Been Waived*

■ Sumner also disputes the date of notice of the PPI rating, arguing that notice

---

ment, noting *Land & Marine Rental Co. v. Rawls*, 686 P.2d 1187, 1192 (Alaska 1984) ("[A] workers' compensation award ... shall accrue lawful interest ... from the date it should have been paid."). As the PPI payment was timely made, no interest award is due.

**7.** The only mention of payment time or method in § 190 is as follows: "The compensation is payable as a single lump sum, except as otherwise provided in AS 23.30.041 [rehabilitation], but the compensation may not be discounted for any present value considerations." AS 23.30.190(a).

was given to ANIC on July 29, rather than July 31 as determined by the Board.

This issue has been waived because it was raised first in the reply brief. Alaska R.App.P. 212(c)(3) (The reply brief "may raise no contentions not previously raised in either the appellant's or appellee's briefs."); *Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 158 (Alaska 1992). If Sumner intended to argue that the Board's finding was clearly erroneous, or not supported by substantial evidence, he should have done so in his points on appeal, or at least in his opening brief.

### D. *There Is No Basis for Awarding a Penalty*

Sumner observes that the Board did not determine whether the controversion was made in bad faith. He contends that this determination should have been made because he believes that bad faith warrants the imposition of a penalty regardless of the promptness of payment.

Sumner cites *Harp v. ARCO Alaska, Inc.*, 831 P.2d 352, 358 (Alaska 1992), for support. *Harp* is inapposite. *Harp* dealt with an allegedly good faith controversion as a means of avoiding a penalty for a delayed payment. The instant case involves no delay; rather, Sumner alleges bad faith as a means of imposing a penalty. The controversion was timely. It was a simple letter to the examining doctor requesting clarification. It did not delay Sumner's receipt of PPI beyond the allotted time.

Sumner provides no other legal basis for imposition of a penalty. Thus, his claim fails.

### III. *CONCLUSION*

The Board reasonably, and in our view correctly, interpreted and applied AS 23.30.155(b) and (e) to the timeliness of PPI payments under section 190. The issue regarding the Board's decision that notice was given to ANIC on July 31 has been waived. All other grounds for reversal argued by Sumner are unpersuasive. Thus, the judgment of the superior court is AFFIRMED.