**Gary C. HAMMER and Alaska Workers' Compensation Board, Appellants,**

**v.**

**CITY OF FAIRBANKS, Appellee.**

No. S–7880.

Supreme Court of Alaska.

Feb. 6, 1998.

---

Lawrence C. Kenworthy, Law Office of Lawrence C. Kenworthy, Fairbanks, for Appellant Gary C. Hammer.

Zane D. Wilson, Cook Schuhmann & Groseclose, Inc., Fairbanks, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

COMPTON, Justice.

### I. INTRODUCTION

Gary Hammer sought a statutory penalty against the City of Fairbanks, claiming that it had failed to timely pay him permanent partial impairment (PPI) benefits to which he was entitled under the Alaska Workers' Compensation Act (Act). The Alaska Workers' Compensation Board (Board) entered a Decision and Order awarding Hammer the penalty. On appeal, the superior court reversed the Board. Hammer appeals. We reverse the judgment of the superior court, and direct reinstatement of the award.

### II. FACTS AND PROCEEDINGS

In April 1993 Gary Hammer injured his knee while working for the City. He received intermittent temporary total disability (TTD) payments "during the course of the next year," the last of which was paid in late April 1994. Following a move to Oklahoma in June 1994 for another job, Hammer consulted Dr. Michael Tanner, an orthopaedic surgeon in Tulsa, regarding the permanency and extent of his disability. On October 6 Dr. Tanner concluded that Hammer had a thirteen percent permanent partial impairment of the whole person. That day, Dr. Tanner sent a letter to the City reporting his conclusion. He stated that it was based on the *revised* 3rd Edition of the American Medical Association Guides to the Evaluation of Permanent Injury (Guidelines), published in 1990. The City received this letter on October 19. On October 26 the City prepared a check for Hammer, based on Dr. Tanner's conclusion, as well as a check to the Second Injury Fund. The City did not send either check, but instead sent a letter to Dr. Tanner asking him to review the impairment rating based on the *unrevised* 3rd Edition of the Guidelines, published in 1988, the edition specifically recognized by 8 Alaska Administrative Code (AAC) 45.122.[1]

Dr. Tanner, using the 1988 Guidelines, restated his findings and conclusions in a letter to the City dated December 6. His opinion was unchanged. The City received this letter on December 20. On December 29 the City mailed to Hammer the check that had been previously prepared.

---

**1.** 8 AAC 45.122(a) was amended in July 1997 to read that "each year ... the board will issue a bulletin for the *'Workers Compensation Manual,'* published by the department, stating the edition of the American Medical Association Guides to the *Evaluation Permanent Impairment* to be used...." However, the former version of 8 AAC 45.122(a) was in effect at the time of the Council hearing. It stated that "[p]ermanent impairment ratings must be based upon the American Medical Association Guides to the Evaluation of Permanent Impairment, third edition (1988)."

The City mailed the check to Hammer via certified, second-day air. The City knew of Hammer's Oklahoma address at the time the check was mailed, because it had previously sent copies of its correspondence with Dr. Tanner to him there. However, the City's computer database had not been updated to reflect Hammer's Oklahoma address, so the check was sent to his previous address in Fairbanks. The check was forwarded by the U.S. Postal Service to Oklahoma, via regular mail. Hammer received the check on January 10, 1995, twenty-one days after the City received the second letter from Dr. Tanner, and eighty-three days after the City received the first letter.

Hammer wrote to the Department of Labor, Division of Workers' Compensation (Division), asking that the City be ordered to pay a penalty. The Division informed the City of Hammer's request, noting that

> AS 23.30.190 requires a lump sum payment unless the employee is in the reemployment process. Mr. Hammer was not in the reemployment process and there is no indication the PPI rating was controverted, therefore the PPI should have been paid in a lump sum. Since it was not, a 25% penalty is due on the entire PPI payment.

It directed the City to pay the penalty. The City requested that the Division reconsider the matter. In a later letter to the City, the Division noted that

> in order to avoid a late payment penalty, the insurer must either controvert timely or show that the conditions were beyond their control to make a timely payment. Since a controvert was not filed the question is whether the conditions were beyond your control.

It observed that

> [a]bsent controverting when it became apparent you were not going to receive a timely response from Dr. Tanner to your October 27, 1994 letter, there were other options available to make a payment and

avoid a penalty. Dr. Tanner's October 6, 1994 letter contained sufficient information to apply his measurements to the unrevised 3rd edition of the AMA Guides, which presumably you have in your office, to determine a rating. Or, bi-weekly payments could have begun with a letter of explanation to Mr. Hammer that you were attempting to obtain a rating under the proper edition of the guides. Or, rather [than] write Dr. Tanner, you could have telephoned his office, or faxed your October 27, 1994 letter, explained that time was of the essence and requested a timely response.

The Division explained that "[w]hat is of concern is how long you would have waited for a response from Dr. Tanner before a payment would have been made. As it is, over an entire month went by before the payment was finally issued." It informed the City that should it refuse to pay, the Division would advise Hammer to file with the Board an application for adjustment of claim. The City refused. Hammer filed an application for adjustment.

The Board found that compensation was due when the City received Dr. Tanner's first PPI rating, and that the City had offered no reason for delaying payment of Hammer's PPI payment other than the need to clarify the rating. Because the City did not "controvert the delay," the twenty-five percent penalty applied. The Board noted that a comparison of the tables in the two versions of the Guidelines indicated the rating would remain the same.[2] The City appealed to the superior court under Appellate Rule 601(b). The superior court concluded that the Board's holding "was arbitrary and lacked a reasonable basis." It reversed the decision of the Board. Hammer appeals.

### III. *DISCUSSION*

This court has been asked to determine which standard of review to apply in review-

---

**2.** The City's Safety, Claims and Benefits Coordinator and the City's attorney had satisfied themselves that there would be little or no difference in the rating, regardless of whether the 1988 or 1990 edition was used. This information apparently was the basis for the following comment in a letter from the City to the Division:

> Anticipating that there may be no monetary change to the revised permanent impairment rating [following Dr. Tanner's re-computation, using the 1990 guidelines] check # 11318 was held pending receipt of the appropriate rating.

ing the Board's decision, an issue previously left open in *Sumner v. Eagle Nest Hotel,* 894 P.2d 628, 630 (Alaska 1995).

### A. *Should the Board's Determination Be Reviewed under the Rational Basis Standard or under the Substitution of Judgment Standard?*

Hammer argues that the issue before the court is one which required the agency to apply its expertise. Thus, he argues that the correct standard of review is the rational basis standard. Hammer defines the issue as what knowledge the employer must have to trigger the pay-or-controvert provision in AS 23.30.155(e). The City argues that review should be based on the substitution of judgment standard, because this is a review of the statutory interpretation of the phrase "becomes due" in AS 23.30.155(e).[3]

The rational basis standard of review "is used where the questions at issue implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987). "The rational basis approach merely determines whether the agency's determination is supported by the facts and is reasonably based in law." *Sumner,* 894 P.2d at 630 n. 5 (quoting *Tesoro,* 746 P.2d at 903).

"The substitution of judgment standard is applied when the question of law does not involve agency expertise or where the expertise is not particularly probative." *Id.* "Application of this standard permits a reviewing court to substitute its own judgment for that of the agency even if the agency's decision had a reasonable basis in law." *Id.* (quoting *Tesoro,* 746 P.2d at 903).

In *Sumner,* the question whether a PPI payment was timely made was also at issue. However, the court determined that "[t]he issue of the appropriate standard of review need not be addressed, as the agency's action satisfies either." *Id.* at 630. Just as in *Sumner,* we would reach the same conclusion in this case regardless of which standard of

review we apply; we thus choose to again defer resolution of the issue.

### B. *Did the Board Err in Determining that the City's Obligation under AS 23.30.155 To Pay Hammer's Lump Sum PPI Benefits Was Triggered by the First Letter from Dr. Tanner?*

#### 1. *Statutory interpretation of AS 23.30.155*

Alaska Statute 23.30.155 provides:

(a) Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled to it, without an award, except where liability to pay compensation is controverted by the employer. To controvert a claim the employer must file a notice, on a form prescribed by the board, stating

(1) that the right of the employee to compensation is controverted;

(2) the name of the employee;

(3) the name of the employer;

(4) the date of the alleged injury or death; and

(5) the type of compensation and all grounds upon which the right to compensation is controverted.

(b) The first installment of compensation becomes due on the 14th day after the employer has knowledge of the injury or death. On this date all compensation then due shall be paid. Subsequent compensation shall be paid in installments, every 14 days, except where the board determines that payment in installments should be made monthly or at some other period.

. . . .

(d) If the employer controverts the right to compensation the employer shall file with the board and send to the employee a notice of controversion on or before the 21st day after the employer has knowledge of the alleged injury or death. If the employer controverts the right to compensation after payments have begun, the employer shall file with the board and send to the employee a notice of controversion

---

3. "Under either standard, no deference is given to the decision of the superior court." *Sumner v.* *Eagle Nest Hotel,* 894 P.2d 628, 630 (Alaska 1995).

within seven days after an installment of compensation payable without an award is due....

(e) If any installment of compensation payable without an award is not paid within seven days after it becomes due, as provided in (b) of this section, there shall be added to the unpaid installment an amount equal to 25 percent of it. This additional amount shall be paid at the same time as, and in addition to, the installment, unless notice is filed under (d) of this section or unless the nonpayment is excused by the board after a showing by the employer that owing to conditions over which the employer had no control the installment could not be paid within the period prescribed for the payment.

Alaska Statute 23.30.155(b) states that "compensation becomes due on the 14th day after the employer has knowledge of the injury or death." Before we can decide when the City's obligation to pay under AS 23.30.155(b) is triggered, we must first determine what is intended by the terms "compensation," "becomes due," and "knowledge of the injury or death." The definitions section of the Act provides us with little guidance. While AS 23.30.395 does not define "become due" or "knowledge," AS 23.30.395(8) defines "compensation" as "the money allowance payable to an employee or the dependents of the employee as provided for in this chapter...." "[T]his chapter" provides that PPI is a "disability" for which the employee receives "compensation." AS 23.30.190(a). Generally it is payable "in a single lump sum."[4] *Id.*

■■■ "Knowledge" does not appear to be a term of art. In context, it means no more than awareness, information, or notice[5] of the injury. An employer has notice of an employee's actual injury when the employee files his original claim pursuant to AS 23.30.100. Within the context of AS

23.30.155(b), however, the employer's notice of the employee's "injury" means notice of the employee's permanent disability as determined by a doctor. Thus an employer has knowledge of the injury resulting in the PPI not later than receipt of the PPI rating. The PPI rating, such as that in Dr. Tanner's letter which stated that Hammer had a thirteen percent permanent impairment of the whole person, represents the residual injury[6] to the employee. Unless the employer is unsatisfied with the rating or is suspicious of the injury and chooses to controvert the rating, the payment "becomes due" within fourteen days after the submission of the rating. Thus, construing AS 23.30.155(b) and (e) together, unless the employer files a controversion, the employer has twenty-one days after receiving the PPI rating to pay or be subject to the statutory penalty. *See Sumner,* 894 P.2d at 631 (holding that AS 23.30.155 applies the twenty-one day period for payment to PPI payments).

2. *The Board's application of AS 23.30.155 to the facts of this case*

■■■ Dr. Tanner sent a letter to the City reporting that he concluded Hammer had a thirteen percent permanent impairment of the whole person. The City received the letter on October 19. The City did not file a controversion of the rating. Rather, on October 26 the City prepared a check for Hammer. The City failed to make the payment to Hammer because Dr. Tanner's rating was based on the *revised* 3rd Edition of the Guidelines, not the *unrevised* 3rd Edition. The City's request that Dr. Tanner review his conclusion based on the unrevised 3rd Edition Guidelines did not relieve the City from the requirement that it compensate Hammer within the fourteen-day period mandated by AS 23.30.155(b). That period began to run when the City received the letter from Dr. Tanner on October 19. To conclude otherwise would permit an employ-

---

4. These sections, read together, declare that "the money allowance payable to an employee for PPI, generally payable in a lump sum, becomes due on the 14th day after the employer has knowledge of the injury."

5. *See Webster's II New Riverside University Dictionary* 669 (1984).

6. "Injury" is defined as an "accidental injury or death arising out of and in the course of employment and an occupational disease or infection which arises naturally out of the employment or which naturally or unavoidably results from an accidental injury...." AS 23.30.395(17).

er to conduct an investigation of the PPI rating without controverting, thus thwarting the policy of the Act—to promote prompt payment by the employer to the injured employee.

The superior court concluded that the Board's holding, based on the City's ability to compare the tables in the two editions of the AMA Guidelines, was arbitrary and lacked a reasonable basis. According to the superior court, requiring an employer to understand the medical diagnosis and whether a significant difference exists between the two editions was unreasonable.[7]

The superior court misinterpreted the Board's reasoning. The Board did not explicitly state the City should have compared the tables or understood the medical diagnosis. Rather, the Board observed that "[u]pon comparing the relevant tables of the AMA Guides third edition and revised third edition . . . one observes the rating in this case remains the same." The Board determined that the City's only reason for delaying payment was the need to clarify the PPI rating. The Board relied on *Clifton v. Western Geophysical*, AWCB No. 90–0078 (Apr. 24, 1990). In *Clifton*, the doctor had not clearly indicated whether the PPI rating was for the injured leg, or for the whole person. *Clifton* at 8 n. 1. The Board determined that the employer should have paid the amount of PPI benefits clearly due, and controverted the remainder while it sought clarification. *Id.*

In this case, like *Clifton*, the City knew Hammer was entitled to benefits. It presumed that the thirteen percent PPI rating was correct, and cut the check, but then withheld payment while it sought clarification of whether the rating would remain the same under the 1988 version of the Guidelines. Under these facts, the Board did not err in determining that the City should have controverted the PPI lump sum payment while it sought clarification.

C. *Did the Board Violate Its Own Regulation by Determining that Dr. Tanner's First Letter Triggered Payment of PPI Benefits?*

█ The superior court also concluded that the Board's violation of its own regula-

tion supports the determination that the Board's decision lacked a reasonable basis. Alaska Statute 23.30.190(b) requires all PPI determinations to be based on the American Medical Association Guides to the Evaluation of Permanent Impairment. The statute does not state which version of the Guidelines to use. The Alaska Administrative Code, promulgated by the Board, states that PPI ratings "must" be based on the 1988 edition of the Guidelines. 8 AAC 45.122(a).

The City argues that AS 23.30.190(b) and 8 AAC 45.122, taken together, require that a facially valid PPI rating based on the 1988 Guidelines is necessary before its obligation to pay PPI benefits is triggered. Hammer argues that the first letter, although based on the wrong edition of the guidelines, provided specific information of Hammer's injury. The letter stated Hammer had "3 [centimeters] of right thigh atrophy," "active range of motion of the knee at 16–90," "crepitus and apprehension with stress testing," and an MRI "which demonstrates the peripatellar adhesions, [and] the chondromalacia of the patellofemoral articulation." The letter also indicated the injury was permanent. The City did not dispute that Hammer was entitled to benefits. It had the undisputed, detailed medical diagnosis of Hammer's injury from Dr. Tanner. It needed only to clarify that the rating would be identical under either version of the Guidelines.

The statute and regulation provide specificity regarding *how* a permanent partial impairment is to be determined, not *when* payment for a permanent partial impairment is due. Since we concluded that payment becomes due upon receipt of a PPI rating, and the statutory time period having elapsed without controversion, the fact that reference to another edition of the Guidelines might yield a somewhat different monetary calculation is not relevant to the issue of triggering payment. Therefore, Dr. Tanner's first letter was sufficient to trigger the obligation of the City to pay or controvert Hammer's claim.

7. *See supra* note 2.

**D.** *Was the City's Letter to Dr. Tanner Requesting Clarification of the October Rating a Controversion Notice within the Meaning of AS 23.30.155?*

The superior court held that the City's letter to Dr. Tanner requesting clarification was a good faith controversion of the claim. Hammer argues that it was not a controversion under AS 23.30.155(d).[8]

The City does not argue on appeal that its letter was a controversion. We agree that it was not. The City's letter did not comply with the statutory requirements for a controversion. AS 23.30.155(a). If the City had knowledge of Hammer's injury and was aware of the obligations imposed on it by AS 23.30.155(b) and (e) when it received Dr. Tanner's first letter, and the City's letter seeking clarification was not a controversion, then it follows that Hammer received his check eighty-three days after the City's obligation to pay was triggered. The Board's award of the penalty to Hammer was authorized by AS 23.30.155(e).

## IV. CONCLUSION

The judgment of the superior court, which reversed the Decision and Order of the Alaska Workers' Compensation Board, is REVERSED. We REMAND with directions to reinstate the Decision and Order of the Board.

---

**8.** AS 23.30.155(d) provides:
   If the employer controverts the right to compensation the employer shall file with the board and send to the employee a notice of controversion on or before the 21st day after the employer has knowledge of the alleged injury or death. . . .