**WRANGELL FOREST PRODUCTS and Alaska Timber Insurance Exchange, Appellants,**

**v.**

**Alan ALDERSON and Alaska Workers' Compensation Board, Appellees.**

**No. S–3006.**

Supreme Court of Alaska.

Feb. 16, 1990.

Thomas J. Slagle, Robertson, Monagle & Eastaugh, P.C., Juneau, for appellants.

Patrick E. Murphy, Batchelor, Murphy & Brinkman, Juneau, for appellee Alderson.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Chief Justice.

Alan Alderson, a log truck driver, was injured while at work on August 4, 1986. Alaska Statute 23.30.185 entitles Alderson to 80% of his spendable weekly wages. Spendable weekly wages are derived from the employee's gross weekly wages minus payroll tax deductions. Under AS 23.30.-220(a)(1), gross weekly wages are reached by dividing by 100 the employee's gross earnings in the two calendar years immediately preceding the injury. Subsection .220(a)(2), however, provides that if this method produces an unfair result, the Board may base its calculation on the nature of the employee's work and on his work history. Alderson earned $7,047 in 1984 and $13,121 in 1985. He earned approximately $21,000 in 1986 prior to his injury.

Alderson asserted before the Board that his earnings could not be fairly calculated

under .220(a)(1), and urged the Board to base his gross weekly wages on his 1986 earnings. He alleged that if not for the injury he would have worked the entire logging season, until November 24, 1986, when the camp shut down for the season, and that his average earnings were approximately $3,368 per month during the season. Alderson also maintained that because of various medical and family crises he was unable to work full time during 1984 and 1985, and therefore, these years are not representative of his true earning capacity.

The Board first calculated Alderson's gross weekly wages according to the method in section .220(a)(1), and reached a result of $201.68. It then calculated Alderson's gross weekly wages based on completing the logging season at his 1986 salary. Applying this method, the Board found that Alderson's total projected income for 1986 was $29,865, producing a gross weekly wage of $574.33. The Board then concluded: the difference between these figures was substantial; Alderson's wages would have continued into the period of disability; there was no evidence to contradict Alderson's account of his present intent or his past difficulties; and the evidence supported Alderson's excuse of past medical problems. Based on these findings, the Board concluded that it would be unfair to apply the method of subsection .220(a)(1). Under subsection .220(a)(2), therefore, the Board set Alderson's gross weekly wages at $574.33, based on his 1986 earnings.

The superior court held on appeal that the Board correctly stated and applied the law, and that its findings were supported by substantial evidence.

Wrangell argues that changes in the applicable statute indicate a legislative intent to base the gross weekly wages on past, not present earnings.

As amended in 1979, AS 23.30.220 provided in pertinent part:

*Determination of Weekly Wage.*... [T]he average weekly wage of the injured employee at the time of the injury is the basis for computing compensation, and is determined as follows:

. . . .

(2) the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;

(3) if the board determines that the wage at the time of the injury cannot be fairly calculated under (2) of this section, or cannot otherwise be ascertained without undue hardship to the employee, the wage for calculating compensation shall be the usual wage for similar service rendered by paid employees under similar circumstances, as determined by the board[.]

In a series of cases beginning with *Johnson v. RCA–OMS, Inc.*, 681 P.2d 905 (Alaska 1984), we have held that where there is a substantial disparity between an employee's average weekly wage calculated under AS 23.30.220(a)(2) and his earnings at the time of the injury, this statute required that the average weekly wage be based on the latter. *Id.* at 907. *See, e.g., Deuser v. State*, 697 P.2d 647, 649 (Alaska 1985) (disparity of approximately $500 between employee's probable future earnings at time of injury and figure yielded by subsection (2) formula held "substantial"); *State v. Gronroos*, 697 P.2d 1047, 1049 (Alaska 1985) (where use of subsection (2) resulted in compensation of over twice employee's wages at time of injury, Board should have proceeded under subsection (3)).

In 1983 the legislature amended AS 23.30.220 to read, in pertinent part:

(a) The spendable weekly wage of an injured employee at the time of an injury is the basis for computing compensation. It is the employee's gross weekly earnings minus payroll tax deductions. The gross weekly earnings shall be calculated as follows:

(1) The gross weekly earnings are computed by dividing by 100 the gross earnings of the employee in the two calendar years immediately preceding the injury.

(2) If the board determines that the gross weekly earnings at the time of the injury cannot be fairly calculated under (1) of this subsection, the board may determine the employee's gross weekly earnings for calculating compensation by considering the nature of the employee's work and work history.

In our view the 1983 amendments do not signal legislative dissatisfaction with the *Johnson* line of cases. Subsection (a)(1) of the 1983 statute simply substitutes a different method of calculating wages based on past earnings. Subsection (a)(2), which requires the Board to consider "an employee's work and work history" rather than the usual wage for employees in similar circumstances, focuses the Board's attention on the particular employee rather than on a hypothetical employee similarly circumstanced. Each version provides a mechanical, historical method of determining the employee's wages in the first instance. In cases where such an approach would be unfair, each version directs the Board to look to an alternative method of calculation in order to achieve fairness. The 1983 change to subsection (a)(2) broadens the range of evidence that the Board can look to in making the fairness determination, but it nonetheless requires that the fairness determination be made.

In *Phillips v. Nabors Alaska Drilling, Inc.*, 740 P.2d 457, 460 n. 7 (Alaska 1987), we stated concerning the 1983 statute:

> Because both the former statute and the current statute provide for use of the alternative wage calculation "[i]f the board determines that the wage at the time of the injury cannot be fairly calculated under [the mechanical-historical wage method]," we endorse the use of the *Johnson* analysis to determine whether the alternative wage calculation of AS 23.30.220(a)(2) is to be used.

We see no reason to retreat from this statement. The *Johnson* analysis was correctly applied by the Board in this case.[1]

 Wrangell also argues that the Board's decision is unsupported by substantial evidence. The Board's determination of Alderson's present wage was uncontroverted. Alderson was earning approximately $3,368 per month when he was injured. He also made a showing, unrefuted by Wrangell, that he would have continued at this wage until November 24, 1986. Added to Alderson's undisputed income from the first part of 1986, this results in a total income greater than the Board's determination of $29,865. The Board's decision is thus supported by substantial evidence.

The decision of the superior court is AFFIRMED.

---

1. In 1988 the legislature amended AS 23.30.-220(a)(2) so that the fairness determination may be made only when the employee was absent from the labor market for 18 months or more in the two years preceding the injury. This significant limitation does not apply to Alderson who was injured before this change became effective, nor does it cast light on the meaning of the 1983 act. *See Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1252 (Alaska 1988) ("While the legislature is fully empowered to declare present law by legislation, it is not institutionally competent to issue opinions as to what a statute passed by an earlier legislature meant.").