CIRCLE DE LUMBER COMPANY, Liberty Mutual Insurance Company, Appellants,

v.

Otto C. HUMPHREY, Alaska Workers' Compensation Board, Appellees.

No. S–11086.

Supreme Court of Alaska.

March 3, 2006.

Colleen Libbey, Libbey Law Offices, Anchorage, for Appellant Circle De Lumber Company.

Randall J. Weddle, Holmes Weddle & Barcott, Anchorage, for Appellant Liberty Mutual Insurance Company.

Tim MacMillan, Attorney at Law, Anchorage, for Appellee Otto C. Humphrey.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

Circle De Lumber Company was ordered to pay workers' compensation benefits to Otto Humphrey for a work-related injury that Humphrey suffered in 1993. Circle De appeals the Alaska Workers' Compensation Board's methods of calculating permanent total disability benefits rates and temporary total disability benefits rates, the retrospective interest awards to Humphrey for late-paid benefits, and the award of attorney's fees to Humphrey in excess of the statutory minimum. We affirm the board's decision in all respects.

### II. FACTS AND PROCEEDINGS

On February 22, 1993 the Circle De Lumber Company (Circle De) hired Otto Humphrey, a resident of Soldotna, as a logging equipment operator. In May 1993 Humphrey suffered a head injury during his em-

ployment with Circle De.[1] Humphrey was riding on the top of a skidder when it struck a tree, causing the top of the tree to break off and hit Humphrey on the head. According to his workers' compensation claim, Humphrey suffered from severe headaches, head trauma, loss of hearing in his right ear, short-term memory loss, loss of equilibrium in his right ear, impaired equilibrium in his left ear, and ringing in his right ear as a result of the accident.

Circle De paid Humphrey temporary total disability (TTD) benefits from May 29, 1993 until November 16, 1995. From November 11, 1995 until December 6, 1996 Circle De paid Humphrey permanent total disability (PTD) benefits. Then Circle De resumed paying TTD benefits, as well as permanent partial impairment (PPI) benefits, until December 9, 1999. On December 7, 1999 a panel of physicians examined Humphrey at Circle De's request and determined that he was permanently and totally disabled. Following this determination, Circle De paid Humphrey PTD benefits effective December 9, 1999. In June 2000 the parties entered into a stipulation declaring that Humphrey was permanently and totally disabled. The stipulation was approved by the Alaska Workers' Compensation Board (hereinafter "the board") in *Humphrey v. Circle De Lumber Co. (Humphrey I )*.[2] The board also determined that Humphrey had been permanently and totally disabled beginning on December 7, 1999.

In *Humphrey II*,[3] issued in November 2000, the board considered Humphrey's request to adjust his PTD weekly compensation rate from $110 per week to $351 per week, based on the wage rate in 1998 of an experienced tree faller ($21.50 per hour), a fifty-hour work week, and a six-month logging season.[4] Following *Gilmore v. Alaska Workers' Compensation Board,*[5] the board agreed to calculate Humphrey's lost earnings based on the nature of his employment and work history under the version of AS 23.30.220(a)(2) that was in effect in 1993,[6] rather than based on the historical average calculation under AS 23.30.220(a)(1).[7] The board accepted Humphrey's calculation, resulting in gross weekly earnings of $560 and a weekly PTD compensation rate of $351, awarded retrospectively to December 7, 1999, the date of the PTD classification.[8] The board also required Circle De to pay interest on any late-paid PTD benefits, and awarded Humphrey the statutory minimum in attorney's fees and costs.[9]

Following the board's decision in *Humphrey II*, Humphrey asked the board to retroactively increase his TTD compensation rate. On January 19, 2001, in *Humphrey III*, the board retroactively adjusted Humphrey's TTD compensation rate from $110 per week to $236.55 per week.[10] As in *Humphrey II*, the board departed from the standard practice of calculating Humphrey's gross weekly wage by using former AS 23.30.220(a)(1), this time using his hourly wage at the time of injury to compute his compensation rate.[11] The board also award-

**1.** There are discrepancies in the record concerning the date on which Humphrey's injury occurred. The board's decision states that the injury took place on May 28, 1993. The occupational injury report, which a Circle De supervisor completed on May 28, 1993 and submitted to the Alaska Department of Labor, indicates that the injury occurred on May 27, 1993. Workers' compensation filings and Humphrey's hearing brief agree that the injury occurred on May 27. However, the superior court decision, which we now review, and Circle De indicate that the injury occurred on May 23, 1993.

**2.** AWCB Decision No. 00–0140 (July 11, 2000).

**3.** *Humphrey v. Circle De Lumber Co. (Humphrey II)*, AWCB Decision No. 00–0235 (Nov. 20, 2000).

**4.** *Id.* at 1, 5–6.

**5.** 882 P.2d 922 (Alaska 1994).

**6.** *See infra* note 32.

**7.** *See Humphrey II* at 8.

**8.** *Id.* at 8–9.

**9.** *Id.* at 9–10.

**10.** *Humphrey v. Circle De Lumber Co. (Humphrey III)*, AWCB Decision No. 01–0018, 8 (Jan. 19, 2001).

**11.** *Id.* at 7–8.

ed Humphrey interest on any late TTD benefits payments, statutory minimum attorney's fees, and costs.[12]

On July 23, 2001, in *Humphrey IV*,[13] the board granted Humphrey's request for retroactive PPI benefits, paid at his TTD compensation rate; granted Humphrey interest on his retroactive PPI benefits; found Circle De in default for failure to pay interest on Humphrey's TTD benefits; awarded Humphrey interest and a penalty on Circle De's defaulted interest payments; and granted Humphrey attorney's fees of thirty-five percent, in excess of the statutory minimum.[14]

Circle De appealed the board's decisions in *Humphrey II–IV* to the superior court. Its appeals were consolidated and heard by Superior Court Judge Michael L. Wolverton. Circle De argued that the board erred in setting Humphrey's PTD and TTD compensation rates; that interest should have accrued only after the board's "due date" for payment set in its order, not on the date when Humphrey originally became entitled to TTD or PPI benefits; and that the board erred in awarding enhanced attorney's fees in *Humphrey IV*. Judge Wolverton found the board's compensation rates for Humphrey's PTD and TTD benefits to be supported by substantial evidence. However, because the board's order was unclear on whether the awarded compensation rates were excessive under the statute, he remanded the case for additional findings.[15] Judge Wolverton af-

firmed the board's awards of interest, reasoning that "the purpose of an interest award is to recognize the time value of money and to reimburse the aggrieved party for value lost." Judge Wolverton also remanded the award of enhanced attorneys' fees; in order to determine whether the enhanced award was manifestly unreasonable, Judge Wolverton needed findings by the board that explained the basis for its decision.

Upon remand, in *Humphrey V*[16] the board found that Humphrey worked for Circle De for nine weeks and four days.[17] The board calculated that, using this period of employment, the PTD compensation rate set by the board ($351 per week) did not exceed Humphrey's gross weekly earnings at the time of injury (which the board calculated to be $421.18 per week).[18]

In a separate decision, *Humphrey VI*, the board ruled on attorney's fees and costs.[19] The board supported its earlier award by finding the award of enhanced fees to have been reasonable and necessary for the successful presentation of Humphrey's claim, and that the failure to award attorney's fees in excess of the statutory minimum would result in "manifest injustice." [20]

Circle De then brought an appeal to this court, alleging error in the board's findings in *Humphrey II–VI*. However, because the board's findings in *Humphrey V* and *VI* had not first been appealed to the superior court,

**12.** *Id.* at 8–9.

**13.** *Humphrey v. Circle De Lumber Co. (Humphrey IV)*, AWCB Decision No. 01–0140 (July 23, 2001).

**14.** *Id.* at 4–6.

**15.** The version of AS 23.30.220(a)(2) that was in effect provided that PTD and TTD weekly benefits may not exceed the employee's gross weekly earnings at the time of injury. *See infra* note 32. The board awarded weekly benefits of $350.11. *Humphrey II* at 8. The parties agreed that Humphrey had earned $7,752.50 in his employment with Circle De, but they disputed the length of his employment. Circle De argued that Humphrey had been employed for thirteen weeks, resulting in a gross weekly wage at the time of injury of $310.10, less than that awarded by the board; Humphrey argued that he had worked less than ten weeks, resulting in a gross weekly wage rate more than that awarded by the board. Because the board had not made a factual find-

ing as to the length of Humphrey's employment with Circle De, Judge Wolverton remanded for additional findings. *See infra* Part IV.A.3.

**16.** *Humphrey v. Circle De Lumber Co. (Humphrey V)*, AWCB Decision No. 03–0104 (May 13, 2003).

**17.** *Id.* at 5. The board noted that, although Humphrey signed an employment contract on February 22, 1993, he did not begin work until approximately one month later, which led to a period of employment of nine weeks, not thirteen weeks as contended by Circle De. *Id.* at 4–5.

**18.** *Id.*

**19.** *Humphrey v. Circle De Lumber Co. (Humphrey VI)*, AWCB Decision No. 03–0134, 1 (June 12, 2003).

**20.** *Id.* at 5.

we concluded that we lacked appellate jurisdiction under Alaska Rule of Appellate Procedure 202(a).[21] We therefore remanded the issues presented in *Humphrey V* and *VI* to the superior court for a final judgment, while staying our consideration of all other issues appealed by Circle De. On remand, Judge Wolverton held that the board did not err in its conclusions in *Humphrey V* and *VI*. Circle De now seeks review on all of its contentions.

## III. STANDARD OF REVIEW

■ When the superior court acts as an intermediate court of appeals, we independently review the decision of the administrative agency.[22] If the parties raise a question of law that does not involve any special agency expertise, we review the legal question under the substitution of judgment standard.[23] Under the substitution of judgment standard, we apply our independent judgment and adopt the rule of law that is most persuasive in light of precedent, reason and policy.[24] If, on the other hand, the question of law involves agency expertise, we review the decision of the administrative agency under the reasonable basis test and "defer to the agency if its interpretation is reasonable."[25] We review an administrative agency's determinations of fact under the substantial evidence standard.[26] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."[27] It is the exclusive province of the board to make determinations of witness credibility.[28]

■ Unless statutory interpretation is required, we review the board's award of attorney's fees for an abuse of discretion.[29] We will uphold the award unless it is manifestly unreasonable.[30]

## IV. DISCUSSION

Circle De challenges Humphrey's PTD compensation rate of $351 per week, his TTD compensation rate of $236.55 per week, the interest awarded to Humphrey, and the grant of attorney's fees in excess of the statutory minimum. We consider each contention in turn.

### A. PTD Compensation Rate

In the case of a permanent and total disability, during the continuance of the disability an employee is entitled to a compensation award of eighty percent of the employee's spendable weekly wages.[31] Under former AS 23.30.220(a), the employee's spendable weekly wage is the employee's gross weekly earnings minus payroll tax deductions.[32] Gross weekly earnings were calculated pursuant to former AS 23.30.220(a)(1): "by dividing by 100 the gross earnings of the employee in the two calendar years immediately preceding the injury." However, in *Gilmore*

21. Appellate Rule 202(a) provides: "An appeal may be taken to the supreme court from a final judgment entered by the superior court ..." *See also City & Borough of Juneau v. Thibodeau*, 595 P.2d 626, 629 (Alaska 1979) ("[A] decision of a superior court, acting as an intermediate appellate court, which reverses the judgment of the court below or the decision of an administrative agency and remands for further proceedings, is a non-final order of the superior court.").

22. *Bradbury v. Chugach Elec. Ass'n*, 71 P.3d 901, 905 (Alaska 2003).

23. *Robinson v. Municipality of Anchorage*, 69 P.3d 489, 493 (Alaska 2003).

24. *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1231 (Alaska 2003).

25. *DeNuptiis v. Unocal Corp.*, 63 P.3d 272, 277 (Alaska 2003).

26. *Robinson*, 69 P.3d at 493.

27. *Robertson v. Am. Mech., Inc.*, 54 P.3d 777, 779 (Alaska 2002) (internal quotation omitted).

28. *Bradbury*, 71 P.3d at 905.

29. *Williams v. Abood*, 53 P.3d 134, 139 (Alaska 2002).

30. *Id.*

31. AS 23.30.180(a).

32. Alaska Statute 23.30.220 was revised in 1995. *See* ch. 75, §§ 9–10, SLA 1995. (The pre–1995 version of AS 23.30.220(a) can be found in ch. 79, § 37, SLA 1988.) Because the injury occurred in 1993, the board properly applied the statute in effect during 1993; accordingly, we review the board's decisions under this statute. *Thompson v. United Parcel Serv.*, 975 P.2d 684, 688 (Alaska 1999) (applying version of workers' compensation statute in effect at time of injury).

*v. Alaska Workers' Compensation Board,*[33] we held that the equal protection clause of the Alaska Constitution forbids the determination of gross weekly earnings under AS 23.30.220(a)(1) when the amount earned by the employee in the two years before the injury is not an accurate predictor of the losses due to the injury.[34] In such cases, the board should calculate gross weekly earnings pursuant to former AS 23.30.220(a)(2): "by considering the nature of the employee's work and work history," with the caveat that the "compensation may not exceed the employee's gross weekly earnings at the time of injury." [35]

In *Humphrey II* the board found "substantial evidence that [Humphrey's] gross weekly wage calculated under AS 23.30.220(a)(1) is not an accurate predicator of the employee's losses due to his injury." [36] First, Humphrey's earnings in the two years prior to his injury had been the two lowest earning years in his most recent ten years of employment.[37] Second, the board found "several indications that [Humphrey's] earning pattern was changing at the time of his injury," resulting in an increased future earning potential.[38] Following *Gilmore,* the board therefore calculated Humphrey's PTD compensation rate under former AS 23.30.220(a)(2) "by considering the nature of the employee's work and work history." [39]

Circle De agrees that it was proper for the board to use this alternative calculation, but argues that the board failed to properly execute this calculation. More specifically, Circle De argues that the board, in setting the PTD compensation rate at $351 per week, committed error by: (1) relying on statistical wage rates rather than on Humphrey's actual earnings history; (2) making a factual finding—that Humphrey's earning patterns were improving—unsupported by substantial evidence; and (3) awarding Humphrey a PTD compensation rate in excess of his gross weekly earnings at the time of injury.

**1. The board did not fail to consider Humphrey's individual history of earnings and employment when making its PTD award.**

■ Circle De argues that the board committed error by using the statistical wage rates for a tree faller, rather than Humphrey's actual earnings history, when calculating his compensation rate under former AS 23.30.220(a)(2). The board predicted Humphrey's losses due to injury by using the 1998 hourly wage rate of an experienced tree faller ($21.50) and multiplying that by the number of hours Humphrey generally worked (fifty per week).[40] The board factored in that Humphrey's work was seasonal in nature and discounted his weekly wage

---

**33.** 882 P.2d 922 (Alaska 1994).

**34.** *Id.* at 928–29; *see also Thompson,* 975 P.2d at 689.

**35.** *Gilmore,* 882 P.2d at 924 n. 1 (quoting former AS 23.20.220(a)(2)).

**36.** *Humphrey II,* AWCB Decision No. 00–0235, 7 (Nov. 20, 2000).

**37.** *Id.* Humphrey's earnings from 1983–1993 were as follows:

| Year | Earnings |
| --- | --- |
| 1983 | $12,907.41 |
| 1984 | $ 6,294.20 |
| 1985 | $13,099.63 |
| 1986 | $21,676.69 |
| 1987 | $14,349.41 |
| 1988 | $15,584.33 |
| 1989 | $19,195.28 |
| 1990 | $20,680.98 |
| 1991 | $ 3,815.14 |
| 1992 | $ 5,773.80 |
| 1993 (injury) | $ 7,752.00 |

*Id.* at 2–4. Humphrey's compensation rate was originally calculated under AS 23.30.220(a)(1) by dividing his gross earnings in the years 1991 and 1992—his two lowest earnings years—by one hundred. *Id.* at 2.

**38.** *Id.* at 8. The board considered the following evidence in concluding that Humphrey's history of temporary and seasonal jobs may be changing into a "more consistent work pattern": Circle De logged year round; Humphrey testified that he hoped his job would be more than temporary; Humphrey's work for Kenai Pacific Lumber Company in 1992 was actually subcontracting work for Circle De; Humphrey earned almost as much during part of the year at Circle De as he had earned during the entirety of the two previous years; and Humphrey had purchased a sawmill prior to his injury and received a job offer in management elsewhere. *Id.*

**39.** *Id.*

**40.** *Id.*

according to the fact that Humphrey would probably work only about six months per year.[41] Circle De contends that using Department of Labor average wage data to set a PTD compensation rate is contrary to our decision in *Wrangell Forest Products v. Alderson*.[42]

In *Wrangell Forest Products* we held that when using the alternative method of calculating gross weekly earnings the board should "focus[ ] . . . on the particular employee rather than on a hypothetical employee similarly circumstanced."[43] Circle De argues that, by ignoring Humphrey's individual labor and earnings situation and relying on average wage rates, the board erroneously focused on a hypothetical employee. However, the board's decision clearly indicates the consideration of numerous facts specific to Humphrey's situation and their possible effect on his earnings level. While determining his PTD compensation rate, the board took into account the nature of Humphrey's employment, the hours and months out of the year that he typically worked, his work history, and the job offer in management he received prior to his injury.[44] The use of a statistical average wage rate, in conjunction with the consideration of Humphrey's past work history and his future earnings potential, does not mean that the board failed to engage in the kind of personalized assessment that we required in *Wrangell Forest Products*.

Circle De also objects to the use of the average wage rate for an experienced tree faller ($21.50), rather than for an equipment operator ($14.00), the job it says Humphrey held with Circle De at the time of his injury. The board awarded Humphrey PTD compensation using the 1998 average wage rate for an experienced tree faller because it concluded that such a rate more accurately predicted Humphrey's losses due to his injury and

resulting disability.[45] The board pointed to Humphrey's testimony that "although he was working as an equipment operator at the time of his injury, he had experience as a tree faller and preferred work as a tree faller."[46] Because a PTD award is designed to compensate a worker for his or her economic losses resulting from permanent exclusion from the work force, consideration of one's long-term employment prospects in light of prior employment can be a reliable method for predicting the likely losses following an employee's injury.

We conclude that the board's decision to use the tree faller wage rate in this case is supported by substantial evidence. Humphrey testified that he had previously worked as a tree faller, and his rehabilitation reports suggest that at a minimum he was employed primarily as a tree faller for each of the five years from 1987 to 1991. He also testified that he in fact preferred such employment. And, as discussed in the next section, the board's factual findings support the notion that Humphrey's earning patterns were stabilizing and improving. Additionally, the board used the average wage rate for 1998 because that was near the time at which the employee was declared permanently and totally disabled.[47] These findings, in conjunction with Humphrey's past employment as a tree faller, adequately support the board's calculation of PTD benefits.

### 2. The board's findings regarding Humphrey's earning patterns are supported by substantial evidence.

■ Circle De vigorously challenges the board's finding that Humphrey's earnings pattern was changing in a favorable direction at the time of his injury. First, Circle De questions the board's reliance on Humphrey's testimony that he hoped his job at Circle De would be permanent because Cir-

**41.** *Id.*

**42.** 786 P.2d 916 (Alaska 1990).

**43.** *Id.* at 918.

**44.** *Humphrey II* at 7–9.

**45.** *Id.* at 8. Indeed, in rejecting the ordinary calculation for the compensation rate under AS 23.30.220(a)(1) and following the alternative method under AS 23.30.220(a)(2), the board concluded that Humphrey's actual past earnings were not an accurate predictor of his losses.

**46.** *Id.* at 4.

**47.** *Id.* at 8.

cle De logged through the winter, and argues that such subjective "hopes" should be disregarded.[48] We reject this absolutist position. In *Justice v. RMH Aero Logging, Inc.*, we stated that "[a]n injured worker's intentions at the time of injury regarding future employment are relevant to determining the reliability of the employee's past work history as a predictor of future lost income."[49] Thus we conclude that Humphrey's testimony regarding his intentions and preferences, to which the board gave credence, cannot be considered irrelevant in determining his losses resulting from the injury.

Circle De also challenges the value of other findings used by the board to support its earnings pattern finding—for example, that Humphrey was offered a job in management elsewhere, but turned it down; that prior to his 1993 hire he had performed subcontractor work for Circle De in 1992; that the amount of his earnings in 1993 demonstrated a more consistent work pattern than in the previous two years; and that he had purchased a sawmill and "considered using it to earn income."[50] The board did not explain the relative weight it gave to each of these independent factors in reaching its conclusion. But while it may be that no one of these factors independently proves that his earnings were improving, we are satisfied that these factors, when considered in the aggregate, point toward an improving earnings potential at the time of injury and that these factors outweigh any evidence presented pointing in the opposite direction.

### 3. Humphrey's PTD compensation rate did not exceed the statutory maximum.

 When the board applies the alternative calculation under former AS 23.30.220(a)(2), the rate of compensation is subject to a ceiling amount—it "may not exceed the employee's gross weekly earnings at the time of injury." The parties agree that Humphrey earned a total of $7,752.50 during his 1993 employment with Circle De, but because they cannot agree on the number of weeks that Humphrey worked at Circle De prior to his injury, the parties dispute the amount of his weekly earnings at the time of disability. Circle De contends that Humphrey's term of employment was thirteen weeks, resulting in a gross weekly wage at the time of injury ($310.10) less than the awarded rate of compensation ($351).[51] In contrast, Humphrey argues that he actually worked at Circle De for only nine weeks and four days before his injury, which would lead to a gross weekly wage at the time of injury ($421.18) well above his awarded compensation rate. The board agreed with Humphrey's characterization of the facts,[52] and this finding is also supported by substantial evidence.

Though Humphrey was formally hired on February 22, 1993, he argued that he did not actually begin working for approximately one month.[53] After reviewing the evidence, the board concluded that, though Humphrey had agreed to work for Circle De on February 22, he "did not begin working, or earning a wage until nine weeks, four days prior to his injury."[54] It also noted that the "employer was not obligated to pay the employee wages until the season could begin" and that "to calculate his earnings on time periods that he did not work [is] inherently unfair."[55] In light of our deference to the board's findings of fact and determinations of witness credibility,[56] we uphold the board's determination

48. *Id.* at 4.

49. 42 P.3d 549, 558 (Alaska 2002).

50. *Humphrey II* at 5, 8.

51. Circle De's calculation follows the board's approach in calculating gross weekly wages: assuming a six-month period of employment over the course of a year and dividing his projected yearly income at Circle De by fifty weeks. *Humphrey II* at 8.

52. *Humphrey V*, AWCB Decision No. 03–0104, 4–5 (May 13, 2003).

53. *Id.* at 4.

54. *Id.* at 5.

55. *Id.*

56. *See Robertson v. Am. Mech., Inc.*, 54 P.3d 777, 779 (Alaska 2002).

of the length of actual employment. Accordingly, Humphrey's PTD compensation rate is not excessive under former AS 23.30.220(a)(2). In sum, we affirm Humphrey's PTD benefits award.

## B. TTD Compensation Rate

Circle De next challenges the board's setting of Humphrey's TTD weekly compensation rate at $236.55. Under former AS 23.30.220, the calculation of an employee's spendable weekly wage for PTD benefits and for TTD benefits is the same.[57] Following the logic of *Humphrey II*, as explained above, in *Humphrey III* the board held that former AS 23.30.220(a)(1) was not an accurate predictor of Humphrey's losses, so it instead considered "the nature of the employee's work and work history" in computing Humphrey's benefit rate under former AS 23.30.220(a)(2).[58] But the board also departed from the *Humphrey II* calculation because it found it "inappropriate to apply the 1998 wage rates to a period of temporary disability that spanned from 1993[to] 1998."[59] Instead, the board calculated Humphrey's weekly earnings by multiplying his hourly wage at the time of injury ($14.00) with his estimated yearly work period (fifty hours per week and six months per year), resulting in gross weekly earnings of $364 and a weekly TTD compensation rate of $236.55.[60] In *Humphrey IV*, the board also applied this rate in calculating Humphrey's retroactive PPI benefits owed by Circle De.[61]

Though the TTD rate is lower than the PTD rate, Circle De challenges the board's TTD calculation and the board's underlying findings that Humphrey would have worked fifty hours per week and six months per year

between 1993 and 1998.[62] Circle De posits that Humphrey's 1993 earnings with Circle De support a forty-hour work week, not a fifty-hour work week. However, Circle De's calculations in this regard are deficient because they are based on its claimed employment period of thirteen weeks, and not the *actual* employment period, as determined by the board, of nine weeks and four days.[63] Having already upheld the fifty-hour/six-month figures under the board's PTD calculation and the nine-plus week employment period, as above, we now conclude that the use of these employment estimations for the TTD calculation, based on Humphrey's work history and future earning potential, is supported by substantial evidence.

## C. The Award of Interest on Humphrey's TTD/PPI Benefits

Circle De challenges three awards of interest to Humphrey by the board. First, after retrospectively increasing Humphrey's TTD benefits compensation rate, in *Humphrey III* the board awarded interest on all late-paid TTD benefits.[64] Second, the board did the same in *Humphrey IV* with respect to late-paid PPI benefits.[65] Third, in *Humphrey IV* the board concluded that Circle De was in default for its interest payments on the TTD benefits under *Humphrey III*, and accordingly awarded interest on the defaulted interest payments.[66]

Circle De argues that the board erred in retroactively accruing interest from the date that Humphrey was originally entitled to TTD or PPI benefits, on May 29, 1993. Circle De contends that the due date

---

**57.** Alaska Statute 23.30.185 provides that compensation for a worker's TTD benefits shall be eighty percent of the employee's spendable weekly wage.

**58.** *Humphrey III*, AWCB Decision No. 01–0018, 7 (Jan. 19, 2001).

**59.** *Id.*

**60.** *Id.* at 8.

**61.** *Humphrey IV*, AWCB Decision No. 01–0140, 4 (July 23, 2001).

**62.** Circle De also proposes that the board should have calculated Humphrey's spendable weekly

wage simply by taking his average wage over the past ten years. But Circle De makes no showing that its backward-looking approach was superior to the board's decision to use Humphrey's actual hourly wage at the time of injury.

**63.** *See supra* Part IV.A.3.

**64.** *Humphrey III* at 8.

**65.** *Humphrey IV* at 4.

**66.** *Id.* at 5.

for payment for the board-calculated benefits was not when Humphrey was initially entitled to receive the benefits, but rather after the board's TTD decision in *Humphrey III* and PPI decision in *Humphrey IV*. In other words, Circle De argues that any interest on late-paid benefits does not begin to accrue until after the post-order due date has passed. We therefore consider when these benefit payments were due, which will determine the date on which interest for Humphrey began to accrue.

"An employee is entitled to interest on compensation that is not paid when due."[67] Our cases and the purposes behind interest awards support the board's decision to make the payments due retroactively to the date Humphrey was entitled to TTD and PPI benefits, May 29, 1993. We have recognized that awards of prejudgment interest in workers' compensation cases "are a way to recognize the time value of money, and they give 'a necessary incentive to employers to ... release money due.'"[68] Accordingly, we have held that a workers' compensation award "shall accrue lawful interest ... from the date it *should have been paid*."[69] We later reiterated the general principle in *Houston Contracting, Inc. v. Phillips*[70] that interest should be awarded from the date that an employee was originally entitled to receive such benefits. There we rejected the assertion that interest should only accrue after the employer received notice of the employee's claim for increased benefits.[71] Similarly, we have rejected an employer's argument that prejudgment interest could not be awarded on medical payments because "medical benefits have no due date" until the board has made a specific order of payment.[72]

Circle De attempts to distinguish the above line of authority by stressing the fact that the TTD and PPI benefits were retroactively increased under the alternative calculation of former AS 23.30.220(a)(2). Because this alternative calculation grants the board discretion in setting the employee's gross weekly earnings, Circle De complains that it was incapable of independently determining the compensation rate at the time of Humphrey's entitlement—"the adjusted compensation rate could not be determined by the employer, only the Board can calculate compensation under AS 23.30.220(a)(2)." We do not agree that the board's decision to use the alternative calculation—which is only done upon a showing that the normal calculation fails to accurately predict the employee's losses—should reduce or divest the employee's right to obtain interest on his late-paid benefits. Although awards of interest are intended to encourage employers to make timely payments of compensation benefits, they are not imposed to punish employers; rather, their primary function is to fairly compensate an injured worker for the time value of money lost over the period of time in which he did not have access to money that was owed to him. Moreover, even Circle De concedes that it remains able to estimate an employee's compensation rate under former AS 23.30.220(a)(2), and to distribute benefits accordingly. The risk of erroneous estimation on the part of the employer does not demand a departure from the ordinary interest rule.

We conclude that the board did not err in awarding interest on late-paid TTD and PPI benefits, where the due date for these payments was set on May 29, 1993, the date on which Humphrey was originally entitled to these benefits.[73]

**67.** *Dougan v. Aurora Elec., Inc.,* 50 P.3d 789, 794 (Alaska 2002); 8 AAC 45.142 ("If compensation is not paid when due, interest must be paid at the rate established in AS 45.45.010 for an injury that occurred before July 1, 2000 ...").

**68.** *Childs v. Copper Valley Elec. Ass'n,* 860 P.2d 1184, 1191 (Alaska 1993) (quoting *Moretz v. O'Neill Investigations,* 783 P.2d 764, 766 (Alaska 1989)).

**69.** *Land & Marine Rental Co. v. Rawls,* 686 P.2d 1187, 1192 (Alaska 1984) (emphasis added).

**70.** 812 P.2d 598 (Alaska 1991).

**71.** *Id.* at 602.

**72.** *Childs,* 860 P.2d at 1191.

**73.** Because we uphold the board's interest awards, we also uphold the board's imposition of a penalty under AS 23.30.155(f) against Circle De for the defaulted interest payments on Humphrey's TTD benefits. *Humphrey IV,* AWCB Decision No. 01–0140, 5 (July 23, 2001). Circle De's contention regarding this penalty recognizes

### D. The Award of Attorney's Fees in Excess of the Statutory Minimum

■ Lastly, Circle De argues that the board erred in granting Humphrey attorney's fees in excess of the statutory minimum without the prior filing of a fee affidavit by Humphrey's attorney. Attorney's fees for a workers' compensation claimant are governed by AS 23.30.145. Subsection (a) of this statute [74] establishes a statutory minimum for attorney's fees: fees may not be less than twenty-five percent on the first $1,000 of compensation or part of the first $1,000 of compensation, and ten percent of all sums in excess of $1,000 of compensation. Subsection (b) [75] provides that the board "shall make an award" for costs, including reason-

able attorney's fees, if the employer fails to file timely notice of the controversy, fails to pay compensation or benefits in a timely manner, or otherwise resists payment of compensation or benefits. [76]

Detailed regulations address the application of these statutory provisions. Under 8 AAC 45.180(b), [77] the statutory minimum set out in AS 23.30.145(a) may be departed from only upon the filing of "an affidavit itemizing the hours expended, as well as the extent and character of the work performed." If the request and affidavit are not properly provided, the board "will deny the request for a fee in excess of the statutory minimum fee, and will award the minimum statutory fee." [78]

---

that the propriety of the penalty is contingent on the propriety of the award of interest. *Humphrey II*, AWCB Decision No. 00–0235, 5–6 (Nov. 20, 2000).

**74.** AS 23.30.145(a) provides:

Fees for legal services rendered in respect to a claim are not valid unless approved by the board, and the fees may not be less than 25 percent of the first $1,000 of compensation or part of the first $1,000 of compensation, and 10 percent of all sums in excess of $1,000 of compensation. When the board advises that a claim has been controverted, in whole or in part, the board may direct that the fees for legal services be paid by the employer or carrier in addition to compensation awarded; the fees may be allowed only on the amount of compensation controverted and awarded. When the board advises that a claim has not been controverted, but further advises that bona fide legal services have been rendered in respect to the claim, then the board shall direct the payment of the fees out of the compensation awarded. In determining the amount of fees the board shall take into consideration the nature, length, and complexity of the services performed, transportation charges, and the benefits resulting from the services to the compensation beneficiaries.

**75.** AS 23.30.145(b) provides:

If an employer fails to file timely notice of controversy or fails to pay compensation or medical and related benefits within 15 days after it becomes due or otherwise resists the payment of compensation or medical and related benefits and if the claimant has employed an attorney in the successful prosecution of the claim, the board shall make an award to reimburse the claimant for the costs in the proceedings, including a reasonable attorney fee. The award is in addition to the compensation or medical and related benefits ordered.

**76.** Although we have previously noted that subsections (a) and (b) are construed separately (*see Haile v. Pan American*, 505 P.2d 838, 840 (Alaska 1973)), they are not mutually exclusive. Rather, in a controverted case, the claimant is entitled to a percentage fee under subsection (a) but may seek reasonable fees under subsection (b). In prior cases we have looked to hourly measures of reasonable compensation, even though the cases qualified for treatment under subsection (a). *See, e.g., Bailey v. Litwin Corp.*, 780 P.2d 1007, 1011 (Alaska 1989) (affirming board's conclusion that claimant was not limited to statutory minimum fee calculated under subsection (a), but rather claimant was entitled to additional reasonable compensation).

**77.** This subsection provides:

A fee under AS 23.30.145(a) will only be awarded to an attorney licensed to practice law in this or another state. An attorney seeking a fee from an employer for services performed on behalf of an applicant must apply to the board for approval of the fee; the attorney may submit an application for adjustment of claim or a petition. An attorney requesting a fee in excess of the statutory minimum in AS 23.30.145(a) must (1) file an affidavit itemizing the hours expended, as well as the extent and character of the work performed, and (2) if a hearing is scheduled, file the affidavit at least three working days before the hearing on the claim for which the services were rendered; at the hearing, the attorney may supplement the affidavit by testifying about the hours expended and the extent and character of the work performed after the affidavit was filed. If the request and affidavit are not in accordance with this subsection, the board will deny the request for a fee in excess of the statutory minimum fee, and will award the minimum statutory fee.

**78.** 8 AAC 45.180(b).

Likewise, under 8 AAC 45.180(d)(1) [79] the reasonable attorney's fees discussed in AS 23.30.145(b) will be awarded only if verified by an affidavit. Failure to file the proper affidavit is "considered a waiver of the attorney's right to recover a reasonable fee in excess of the statutory minimum fee under AS 23.30.145(a)" unless the board determines good cause exists to excuse the failure to comply.[80] The procedural requirements of both subsections can be set aside only "if manifest injustice to a party would result from a strict application of the regulation;" they may not be set aside "merely to excuse a party from failing to comply ... or to permit a party to disregard the requirements of the law." [81]

In *Humphrey IV* the board departed from the statutory minimum and awarded Humphrey attorney's fees of thirty-five percent of the award.[82] Since the board relied on the attorney's fees provision of AS 23.30.145(a) in augmenting the fees, the affidavit requirements of 8 AAC 45.180(b) would apply unless modified or waived under 8 AAC 45.195.[83]

The superior court remanded the issue of augmented attorney's fees back to the board for findings to support the board's decision. On remand in *Humphrey VI*,[84] the board made findings to set aside the procedural requirements because they worked a "manifest injustice." The board stated:

The nature, length, and complexity of the services provided by Attorney Reinhold were such to justify the award of attorney's fees in excess of the statutory minimums. The employee suffered a head injury which resulted in on-going short-term memory loss making attorney-client communication unusually difficult. This was a highly contentious dispute with complex issues. The employee's attorney Rhonda Reinhold successfully prosecuted the employee's claims. Attorney Rhonda Reinhold was instrumental in obtaining the benefits sought by the employee. She was also a strong and effective advocate for her client. The Board in *Humphrey IV* awarded substantial benefits including an increased PPI rate from $110 per week to $236.55 per week, interest on the retroactive PPI benefits, an award of penalty and interest on the interest employer failed to pay as directed in *Humphrey III*, and a supplementary order of default for benefits ordered by the board in *Humphrey III*. Statutory minimum fees would be inadequate in proportion to the services performed. We find the fees awarded in Humphrey IV were reasonable and necessary for the successful presentation of employee's claim. Accordingly, pursuant to 8 AAC 45.195 we find that failure to award attorney's fees in excess of the statutory minimum would result in "manifest injustice." [85]

---

**79.** 8 AAC 45.180(d) provides:

The board will award a fee under AS 23.30.145(b) only to an attorney licensed to practice law under the laws of this or another state.

(1) A request for a fee under AS 23.30.145(b) must be verified by an affidavit itemizing the hours expended as well as the extent and character of the work performed, and, if a hearing is scheduled, must be filed at least three working days before the hearing on the claim for which the services were rendered; at hearing the attorney may supplement the affidavit by testifying about the hours expended and the extent and character of the work performed after the filing of the affidavit. Failure by the attorney to file the request and affidavit in accordance with this paragraph is considered a waiver of the attorney's right to recover a reasonable fee in excess of the statutory minimum fee under AS 23.30.145(a), if AS 23.30.145(a) is applicable to the claim, unless the board determines that good cause exists to excuse the failure to comply with this section.

**80.** 8 AAC 45.180(d)(1).

**81.** 8 AAC 45.195.

**82.** *Humphrey v. Circle De Lumber Co. (Humphrey IV)*, AWCB Decision No. 01–0140, 6 (July 23, 2001).

**83.** 8 AAC 45.195 provides:

A procedural requirement in this chapter may be waived or modified by order of the board if manifest injustice to a party would result from a strict application of the regulation. However, a waiver may not be employed merely to excuse a party from failing to comply with the requirements of law or to permit a party to disregard the requirements of law.

**84.** *Humphrey VI*, AWCB Decision No. 03–0134 (June 12, 2003).

**85.** *Id.* at 5–6.

The board reached this conclusion without the prior filing of a fee affidavit by Humphrey's counsel, and in *Humphrey VI* Humphrey was represented by new counsel, not the attorney who obtained the enhanced award.[86] The superior court later upheld the board's findings.

The board's conclusion regarding the inadequacy of the statutory minimum would unquestionably be sustainable if the enhanced fees were awarded on the basis of either a fee affidavit[87] or a finding by the board of good cause excusing the filing of an affidavit.[88] In the absence of an affidavit or a finding of good cause by the board, the only basis for upholding the award of greater than the minimum statutory fees is 8 AAC 45.195, the board's regulation permitting procedural requirements to be waived or modified in cases of manifest injustice. It appears that the board relied on this regulation, because it found "manifest injustice" would result were fees greater than the statutory minimum not awarded.

In assessing the board's invocation of its power to waive or modify board regulations, we believe that it is appropriate to apply a standard that is at least as deferential as that which we apply when reviewing a trial court's decision to relax the Civil Rules pursuant to Civil Rule 94. In such cases, the trial "court's invocation of Rule 94 will only be reversed for abuse of discretion."[89] Here, in view of the board's detailed findings as to the extent and quality of attorney Reinhold's services, and in the absence of any timely claim by the appellant that the lack of an affidavit impeded its challenge of the board's award,[90] we are unable to conclude that the board abused its discretion in deciding to waive the affidavit requirement of 8 AAC 45.180(b). Accordingly, we affirm the superior court's decision to uphold the board's award of attorney's fees to Humphrey.

86. *Id.* at 3.

87. 8 AAC 45.180(b).

88. 8 AAC 45.180(d)(1).

89. *City & Borough of Juneau v. Comm'l Union Ins. Co.*, 598 P.2d 957, 960 (Alaska 1979).

## V. CONCLUSION

Because the PTD and TTD compensation rates set by the board were properly calculated under the law and were supported by substantial evidence, we AFFIRM these rates. Because the award of interest on Humphrey's late-paid TTD and PPI benefits began to accrue as of the date of TTD and PPI classification, we also AFFIRM the interest awards. Finally, because the board did not abuse its discretion in awarding attorney's fees, we AFFIRM that award.

**Y.J., Appellant,**

v.

90. Circle De did not raise the argument that the lack of an attorney's fees affidavit prevented it from even challenging the award until its reply brief in this court.